ASOCIACIÓN VECINOS DE ALTAMESA ESTE, INC., JOSÉ RIVERA DÍAZ y OTROS, opositores y recurrentes, *v.* MUNICIPIO DE SAN JUAN, agencia recurrida, y VECINOS UNIDOS DE COLLEGE PARK, INC., peticionarios y recurridos.

*Número:* CE-94-185 *Resuelto:* 12 de febrero de 1996

*Víctor M. Bermúdez Pérez*, abogado de la parte recurrente; *Héctor M. Collazo* y *José M. Torres Morales*, abogados de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

A través del recurso de epígrafe se nos ha planteado la controversia de si en los casos en que se emite un dictamen preliminar al amparo de la ley[1] que condiciona la autorización de un sistema de control de acceso, al cumplimiento de ciertas modificaciones, los municipios tienen el deber de notificar a todas las partes que se hayan opuesto a tal autorización que la correspondiente declaración de los propietarios que adopta el dictamen preliminar ha sido archivada en autos. Ello como requisito para que comience a transcurrir el término dispuesto por ley para presentar revisión judicial.

Nos corresponde resolver, y lo hacemos en la afirmativa ya que no podemos favorecer una interpretación que interfiera con el derecho de una parte a acudir en revisión judicial. En vista de ello, y atendida la situación fáctica del caso de autos, revocamos la resolución recurrida. Los hechos del caso se detallan a continuación.

## I

La Asociación de Residentes "Vecinos Unidos de College Park, Inc." (en adelante la Asociación) presentó ante el Municipio de San Juan (en adelante el Municipio) una solicitud para el cierre de calles y el establecimiento de un sistema de control de acceso a la urbanización College Park de Río Piedras. Ello conforme a las disposiciones de la Ley Núm. 21 de 20 de mayo de 1987, según enmendada, 23 L.P.R.A. sec. 64 *et seq.*

---

[1] Ley Núm. 21 de 20 de mayo de 1987, según enmendada, 23 L.P.R.A. sec. 64 *et seq.*

El Municipio procedió a celebrar vistas públicas para considerar la solicitud presentada. A estas vistas comparecieron varios residentes de la urbanización Altamesa con el propósito de manifestar su oposición. No obstante, el 28 de abril de 1993 la Asamblea Municipal de San Juan aprobó una resolución para autorizar preliminarmente el referido proyecto e indicó las condiciones bajo las cuales debería desarrollarse.[2]

Posteriormente, la Asociación promovente presentó ante el Municipio las correspondientes declaraciones juradas, acreditando que la resolución preliminar emitida había sido aceptada por un setenta y siete por ciento (77%) de los residentes-propietarios del área que sería controlada. En consecuencia, el 2 de julio de 1993 el Municipio emitió una certificación para aprobar finalmente el control de acceso solicitado. En ésta hizo constar expresamente que las referidas declaraciones juradas habían sido *recibidas* en las oficinas del Municipio el 14 de junio de 1993.

Así las cosas, el 22 de julio de 1993 los vecinos de la urbanización Altamesa, organizados como la Asociación de Vecinos de Altamesa Este, Inc. (en adelante Altamesa), presentaron una solicitud de revisión ante el Tribunal Superior, Sala de San Juan. Alegaron, en síntesis, que el permiso de control de acceso otorgado a los vecinos de College Park había sido concedido en violación a las disposiciones de la Ley Núm. 21, *supra.*

Por su parte, la Asociación recurrida solicitó la desestimación del recurso presentado. Adujo que habiéndose archivado en el Municipio la declaración jurada que adoptaba el dictamen preliminar el 14 de junio de 1993, el recurso de revisión había sido presentado fuera del término jurisdiccional de veinte (20) días dispuesto por ley para cuestionar ante el foro judicial la determinación preliminar emitida por el Municipio.

Altamesa presentó un escrito oponiéndose a la desesti-

---

[2] Resolución Núm. 75, Serie 1992–93.

mación solicitada ya que, a su entender, el punto de partida para computar el término para recurrir ante el foro judicial debía ser el momento en que el Municipio había emitido la certificación para autorizar finalmente el proyecto, momento en que habían advenido realmente en conocimiento de la determinación tomada.

Sin embargo, el 7 de febrero de 1994 el Tribunal Superior, extinta Unidad Especial de Jueces de Apelaciones (Hon. German J. Brau),(³) emitió una resolución para desestimar la solicitud de revisión presentada por carecer de jurisdicción para entender en ella. Concluyó dicho foro que a tenor con las disposiciones de la Ley Núm. 21, *supra*, habiéndose archivado la declaración de los propietarios que adoptaba el dictamen preliminar el *14 de junio de 1993*, y habida cuenta que el recurso de revisión había sido presentado el *22 de julio de 1993*, debía resolver que éste había sido presentado tardíamente.(⁴)

Inconforme con el dictamen emitido, Altamesa acudió ante nos mediante petición de *certiorari* para solicitar la revocación de la resolución recurrida. A través de dicha petición sostiene, en síntesis, que el tribunal a quo incidió al desestimar el recurso ante su consideración por falta de jurisdicción, ya que el archivo de la declaración de los propietarios nunca fue notificado por el Municipio.(⁵)

Ante los planteamientos presentados por la parte aquí peticionaria, y a los fines de armonizar y salvaguardar los derechos e intereses de las partes involucradas en los procesos de implantación de controles de acceso en las comu-

---

(³) Según surge de la resolución recurrida, el recurso presentado fue referido del Tribunal Superior a la extinta Unidad Especial de Jueces de Apelaciones.

(⁴) Solicitada oportunamente la reconsideración del referido dictamen, el foro sentenciador procedió a denegarla de plano.

(⁵) La petición de *certiorari* contiene los señalamientos de error siguientes:

A. Erró el Honorable Tribunal Superior, Sala de San Juan, Unidad Especial de Jueces de Apelaciones, al denegar el recurso de revisión presentado ante su consideración por falta de jurisdicción.

B. Erró el Honorable Tribunal Superior, Sala de San Juan, Unidad Especial de Jueces de Apelaciones al determinar que el término para revisar se computa desde que se emite el dictamen preliminar.

nidades del país, decidimos revisar y el 16 de mayo de 1994 emitimos una resolución mediante la cual expedimos el recurso presentado. Habiendo comparecido ambas partes, y estando en posición de resolver, procedemos a así hacerlo.([6])

## II

■ Con el propósito de promover una mayor participación de la ciudadanía en la lucha contra el crimen y procurar una mejor convivencia en las comunidades del país, el 20 de mayo de 1987 la Legislatura aprobó la Ley Núm. 21, *supra*, sobre el control de tráfico y uso público en áreas residenciales.([7]) A través de esta ley se estableció un procedimiento mediante el cual las personas que residan en urbanizaciones o calles cuyas vías públicas no sean utilizadas como acceso de entrada o salida a otras comunidades, pueden solicitar y obtener autorización para establecer un sistema de control de acceso a las calles que se encuentren dentro de su área residencial.

A partir de la aprobación de la Ley Núm. 21, *supra*, el legislador ha ido evaluando los efectos y las consecuencias de su implantación, resultando ello en la aprobación de varias enmiendas sustanciales que han tratado de atemperar las controversias y reclamos que, a través del tiempo y la experiencia, han ido surgiendo. De esta forma se ha intentado armonizar los importantes intereses y derechos involucrados en tan novedoso ordenamiento.

■ A tales efectos, el 10 de agosto de 1988 la Asamblea

---

([6]) Adviértase que la asociación recurrida, Asociación de Residentes "Vecinos Unidos de College Park, Inc." (en adelante la Asociación), presentó su alegato oponiéndose a la petición de *certiorari* presentada por Altamesa. El Municipio de San Juan (en adelante el Municipio) no presentó su alegato, sin embargo, presentó una moción en la cual sostiene que se solidariza con los planteamientos esgrimidos por la Asociación recurrida.

([7]) Véase Exposición de Motivos de la Ley Núm. 21 de 20 de mayo de 1987, Leyes de Puerto Rico, pág. 64.

Legislativa aprobó la Ley Núm. 156 (23 L.P.R.A. sec. 64 *et seq.*) la cual particularmente traspasó a los municipios del país —con el asesoramiento de la Junta de Planificación de Puerto Rico— la facultad que originalmente había sido concedida a dicha junta para autorizar los controles de acceso.[8] Los requisitos estatutarios para la solicitud de los permisos quedaron esencialmente iguales. Se estableció, sin embargo, el procedimiento particular que se deberá seguir para su expedición.[9]

■ Una segunda revisión de la Ley Núm. 21, *supra,* trajo consigo la aprobación de la Ley Núm. 22 de 16 de julio de 1992. Ésta, entre otras cosas, dispuso la manera específica en que los municipios deberán emitir su dictamen al autorizar un sistema de control de acceso. Además, se establecieron ciertas garantías de debido proceso de ley que han tenido el efecto de proteger tanto los derechos de las personas que solicitan el cierre, como los de aquellas que de alguna manera pudieran verse afectadas por éste.

■ Específicamente, y en lo pertinente a la controversia de autos, con la aprobación de dicha enmienda se dispuso lo siguiente:

(d) Dictamen del municipio.— El municipio emitirá su decisión sobre toda solicitud de permiso de control de acceso no más tarde de los diez (10) días laborables siguientes a la fecha de celebración de la última vista pública.

Si la determinación del municipio favorece los controles propuestos por la Junta, Consejo o Asociación de Residentes, emitirá un dictamen final y autorizará la implantación. Dicho dictamen será firme desde la fecha del archivo en el municipio de copia de su notificación. *Si la autorización del municipio modifica o establece restricciones a los controles propuestos por la Junta, emitirá un dictamen preliminar que contendrá las condiciones, cambios o modificaciones bajo los cuales deberá desa-*

---

[8] Dicho traspaso tuvo el propósito de proveer un trámite más expedito y flexible. Véase Exposición de Motivos de la Ley Núm. 156 de 10 de agosto de 1988, Leyes de Puerto Rico, pág. 723.

[9] Véase 23 L.P.R.A. secs. 64 y 64b.

*rrollarse el proyecto teniendo que adoptarse dicho dictamen pre-*
*liminar mediante declaración firmada por no menos de tres*
*cuartas (3/4) partes de los propietarios,* dentro de los quince
(15) días siguientes a la fecha de archivo en el municipio de
copia de su notificación. La firma de dichos propietarios estará
limitada a un propietario por vivienda.

El dictamen preliminar adoptando el control de acceso con
las condiciones impuestas por el municipio será firme a la fecha
del archivo en el municipio de la declaración antes requerida.
(Énfasis suplido.) 23 L.P.R.A. sec. 64b(d).

 Como parte de las garantías del debido proceso
de ley que fueron incluidas, se estableció el derecho de
cualquier parte a solicitar la revisión judicial cuando no se
encuentre de acuerdo con la decisión tomada por el muni-
cipio en torno a una solicitud de permiso de control de
acceso. Tal derecho se dispuso expresamente de la manera
siguiente:

(e) Reconsideración y revisión judicial.— Toda persona, Aso-
ciación de Residentes, urbanizador o desarrollador que no esté
de acuerdo con la decisión del municipio sobre una solicitud de
permiso de control de acceso, *podrá solicitar su revisión judicial*
*dentro de los veinte (20) días siguientes a la fecha de archivo en*
*el municipio de copia de la notificación concediendo la autori-*
*zación o permiso de control de acceso o del archivo de la decla-*
*ración jurada adoptando el dictamen preliminar, según sea el*
*caso.* ... (Énfasis suplido.) 23 L.P.R.A. sec. 64b(e).

Es precisamente al amparo de las disposiciones antes
transcritas que surge la controversia de autos. A esos efec-
tos, la parte recurrida sostiene que la ley es clara al esta-
blecer que el término para solicitar revisión, en aquellos
casos en que el municipio emite un dictamen preliminar
que impone cambios o condiciones a la solicitud de control
de acceso, comenzará a transcurrir a partir del instante en
que quede archivada en el municipio la declaración jurada
de los propietarios que aceptan tal dictamen. Ello, sin que,
a su entender, se requiera notificación de tal archivo.

No podemos coincidir con tales planteamientos. De así
hacerlo convertiríamos la concesión del derecho a cuestio-

nar las determinaciones tomadas por los municipios en un ejercicio fútil. Veamos.

 Como podrá observarse, en los casos en que un municipio emite en primera instancia un dictamen final que autoriza el control solicitado, el deber de notificación se desprende claramente de las disposiciones aludidas. Ello, en vista de que al disponer que el término para presentar una revisión judicial comenzará a transcurrir partiendo del archivo de la notificación del dictamen, lógicamente se establece el deber de notificación.

 Ahora bien, en los casos en que un municipio emite un dictamen preliminar para imponer condiciones al control solicitado, la situación resulta diferente. Ciertamente en estos casos, dichas disposiciones ni ninguna otra sección de la ley disponen *expresamente* el deber afirmativo de notificación. Tampoco resultan de aplicación las disposiciones sobre notificación contenidas en la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 *et seq.*) ya que ésta expresamente excluye de su cobertura a los gobiernos municipales. 3 L.P.R.A. sec. 2102(a)(5). Véase, además, *Asoc. Res. Linda Gardens v. Mun. Guaynabo*, 138 D.P.R. 925 (1995).[10]

No obstante, somos del criterio que tal deber de notificación se puede colegir tanto del espíritu de la referida legislación, como de las exigencias del debido proceso de

---

[10] Nótese que *a manera de excepción*, la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 L.P.R.A. sec. 4001, establece en su Art. 2.004(o) (21 L.P.R.A. sec. 4054(o)) que todo *reglamento* para ejecutar o implantar las autorizaciones para el control de acceso se aprobará de conformidad con la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2101 *et seq.*

No empece, consideramos que dicho artículo tuvo el propósito de establecer que en tales situaciones serán de aplicación únicamente las disposiciones del subcapítulo II sobre "Procedimientos para la Reglamentación" contenidas en la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, *supra*. Tal artículo no pudo haber tenido el efecto de hacer aplicables las restantes disposiciones de la ley.

ley. Varias razones justifican y le dan sentido a nuestro criterio.

■ En primer lugar, hemos sostenido que el derecho a cuestionar una determinación mediante la revisión judicial, al ser expresamente provisto por estatutos, pasa a formar parte del debido proceso de ley. Resultando, por lo tanto, indispensable y crucial el que se notifique adecuadamente dicha determinación a todas las partes cobijadas por tal derecho. Véanse: *Falcón Padilla v. Maldonado Quirós*, 138 D.P.R. 983 (1995); *Arroyo Moret v. F.S.E.*, 113 D.P.R. 379 (1982); *Berríos v. Comisión de Minería*, 102 D.P.R. 228 (1974).

■ Debe advertirse, además, que la notificación de órdenes, resoluciones y sentencias ha sido reiteradamente protegida por nuestro ordenamiento, ya que sirve un propósito lógico y sabio en la administración de la justicia.[11] A tales efectos, brinda a las partes la oportunidad de advenir en conocimiento real de la determinación tomada, a la vez que otorga a las personas cuyos derechos pudieran verse transgredidos una mayor oportunidad de determinar si ejercen o no los remedios que le han sido concedidos por ley. De esta manera se obtiene un equilibrio justo entre los derechos de todas las partes, y se obtiene un ordenado sistema de revisión judicial.

■ De otra parte, en *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 D.P.R. 181 (1993), al examinar la legislación sobre control de acceso, expresamos lo siguiente:

> *La delicada política pública tras este ordenamiento requiere armonizar el interés de los ciudadanos en su seguridad y bienes-*

---

[11] Para un estudio de diversas situaciones en las que hemos protegido el requisito de notificación y nos hemos negado a favorecer una interpretación que interfiera con ello, véanse, por vía de comparación: *Falcón Padilla v. Maldonado Quirós*, 138 D.P.R. 983 (1995); *Rivera v. Depto. de Servicios Sociales*, 132 D.P.R. 240 (1992); *Canales v. Converse de Puerto Rico, Inc.*, 129 D.P.R. 786 (1992); *Pueblo v. Hernández Maldonado*, 129 D.P.R. 472 (1991); *Villanueva v. Hernández Class*, 128 D.P.R. 618 (1991); *García v. Adm. del Derecho al Trabajo*, 108 D.P.R. 53 (1978); *Vda. de Carmona v. Carmona*, 93 D.P.R. 140 (1966).

*tar con los derechos de propiedad y de libertad de otras perso-
nas ....* Tanto la Ley Núm. 21, según enmendada, *supra,* como
el reglamento de la Junta de Planificación de Puerto Rico y las
ordenanzas municipales que la implantan, *intentan armonizar
estos intereses.* (Énfasis suplido.)

 Incluso, en dicha ocasión sostuvimos que el escru-
tinio que deben realizar los municipios al considerar una
propuesta de control de acceso no debe ser liviano, *"ya que
persigue asegurar que el sistema propuesto no transgreda
los derechos que nuestro ordenamiento le ha conferido a
todas las partes afectadas por la medida".* (Énfasis
suplido.)([12])

Las expresiones vertidas demuestran el reconocimiento
de la importancia que tiene dentro de esta legislación el
equiparar y *proteger los derechos de todas las partes* invo-
lucradas en el proceso. Protección que, no sólo ha procu-
rado la Legislatura a través de sus revisiones y enmiendas,
sino que a nosotros nos corresponde hoy salvaguardar pre-
cisamente realizando una interpretación que garantice el
derecho de revisión judicial.

El procurar tal salvaguarda nos impide sostener una
interpretación que distinga entre las situaciones en que un
municipio emite un *dictamen final* en primera instancia,
de aquéllas en que se emite un *dictamen preliminar* para
imponer condiciones adicionales, a los efectos de que en
este último caso no se requiere notificación. A fin de cuen-
tas, en ambas situaciones las partes tienen el mismo dere-
cho a cuestionar el dictamen emitido.

 Al amparo de todo lo previamente esbozado, nos
resulta forzoso resolver que: (*a*) en aquellos casos en que
un municipio emita un *dictamen preliminar* para condicio-
nar la autorización de un sistema de control de acceso al
cumplimiento de ciertos requisitos, deberá notificar a toda
aquella persona o asociación de residentes que durante la

---

([12]) *Caquías v. Asoc. Res. Mansiones Río Piedras,* 134 D.P.R. 181 (1993).

celebración de la correspondiente vista pública([13]) hubiese presentado su oposición a la autorización del control de acceso solicitado, que la declaración de los propietarios que adopta el dictamen preliminar ha sido archivada en autos,([14]) y (b) en los casos en que se emita en primera instancia un *dictamen final* para autorizar el control solicitado, los municipios deberán entonces notificar tal dictamen.

◼ Como parte de la notificación deberán también informar a dichos ciudadanos su derecho a interponer el recurso de revisión, así como el término para hacerlo. Será entonces a partir del archivo de la notificación aquí requerida en el municipio que comenzará a transcurrir el término para presentar revisión judicial ante el tribunal correspondiente.

Al así resolver, logramos una decisión a tono con la delicada política pública tras la legislación en controversia. Política pública que en última instancia consiste en procurar una mejor calidad de vida para *todas* las comunidades del país. Además, debemos reconocer que resulta razonable y necesario apercibir a ciudadanos legos de los derechos que les asisten y que de otra forma les sería muy difícil conocer. Máxime, tomando en consideración que la presentación de la declaración de los propietarios en el municipio se lleva a cabo por éstos de manera exparte, quedando en-

---

([13]) Adviértase que nos referimos a las vistas públicas dispuestas en el inciso (a) de la Sec. 3 de la Ley Núm. 21, *supra*, 23 L.P.R.A. sec. 64b(a).

([14]) Es de observar que la Sec. 5.05 del Reglamento de Control de Tránsito y Uso Público de Calles Locales (Reglamento de Planificación Núm. 20), Junta de Planificación, 7 de febrero de 1989, dispone que cuando el municipio reciba devuelta la declaración de tres cuartas (3/4) partes de los propietarios, emitirá una resolución autorizando el establecimiento de las facilidades propuestas. Dispone, además, que *dicha resolución será la que deberá ser notificada a todas las "partes interesadas"*.

No obstante, dicho reglamento, además de no definir lo que constituye una parte interesada, fue adoptado por la Junta de Planificación el 3 de octubre de 1988 y aprobado por el Gobernador el 5 de enero de 1989. Es decir, antes de la aprobación de la Ley Núm. 22 de 16 de julio de 1992 (23 L.P.R.A. sec. 64 *et seq.*), disponiendo que en estos casos se podrá presentar una revisión judicial *a partir del archivo de la declaración jurada* de los propietarios adoptando el dictamen preliminar.

tonces totalmente al arbitrio de los municipios la fecha de su archivo en autos.

## IV

A la luz de la normativa antes expuesta, pasemos a analizar los hechos del caso de autos. De éstos se desprende que la Asamblea Municipal emitió un dictamen preliminar para condicionar la autorización del sistema propuesto al cumplimiento de ciertas condiciones. Así las cosas, los propietarios del área que ha de controlarse presentaron en el Municipio la correspondiente declaración jurada para aceptar las condiciones impuestas.

En consecuencia, el *2 de julio de 1993* el Municipio emitió una certificación para autorizar finalmente el proyecto, e indicó que la declaración de los residentes había sido recibida en las oficinas del Municipio el *14 de junio de 1993*. Fue precisamente a través de tal certificación, es decir por lo menos *dieciocho (18)* días después de la presentación de la declaración de los propietarios en el Municipio, que los aquí peticionarios advinieron en conocimiento de tal evento.[15] Por esta razón, éstos recurrieron ante el foro judicial el 22 de julio de 1993, dentro del término de veinte (20) días de emitida por el Municipio la certificación que finalmente autorizaba el proyecto.

Ante este cuadro de circunstancias, resulta meridianamente claro que el derecho de los peticionarios a cuestionar el dictamen emitido resultó perjudicado al desestimarse el recurso por falta de jurisdicción, teniendo ello el efecto neto de enervar las garantías del debido proceso de ley.

En consecuencia, y a la luz de todo lo expuesto anteriormente, *concluimos que no procedía la desestimación decretada por el foro sentenciador. En vista de ello, se dictará*

---

[15] Sostienen los peticionarios que dicha certificación la obtuvieron mediante una búsqueda personal realizada por el Presidente de la Asociación de Residentes, ya que ésta tampoco fue notificada.

*sentencia que revoque la resolución recurrida y se devolverá el caso al Tribunal de Primera Instancia, Sala Superior de San Juan,*[16] *para que continúen los procedimientos de forma compatible con lo expuesto en esta opinión.*

El Juez Asociado Señor Negrón García concurrió con una opinión escrita. La Juez Asociada Señora Naveira de Rodón no intervino.

— O —

Opinión concurrente del Juez Asociado Señor Negrón García.

Legaz y Lacambre acertadamente nos dice que el "derecho se entiende mejor si la palabra es correcta". No propugnamos el uso a ultranza de la gramática, del estilo o del precepto; simplemente proponemos que el lenguaje estatutario sea un medio esclarecedor para el entendimiento correcto de la idea e intención del legislador. Después de todo, el "derecho no es mudo. En su tránsito científico tiene y contiene —admítase el binomio conceptual— una forma de expresión: la palabra. También, durante las actuaciones ante la justicia, la palabra, como medio de comunicación, exhibe su papel importante. Es un vehículo cardinal en las pretensiones, en las defensas, en las sentencias. En fin, en todos los pasos. La palabra está en función jurídica para custodiar esa función". N. Amílcar Cipriano, *Misión y jerarquía de abogados y jueces*, Buenos Aires, Ed. Depalma, 1990, pág. 150.

La solución de este caso requiere interpretar los incisos (d) y (e) del Art. 3(1) de la ley sobre control de acceso vehi-

---

[16] Adviértase que en *Asoc. Res. Linda Gardens v. Mun. Guaynabo*, 138 D.P.R. 925 (1995), resolvimos que el tribunal con competencia para entender en casos como el de autos es la Sala del Tribunal de Primera Instancia del municipio que dictó la resolución impugnada.

[1] 23 L.P.R.A. sec. 64b(d) y (e).

cular, Ley Núm. 21 de 20 de mayo de 1987, según enmendada, 23 L.P.R.A. sec. 64 *et seq.* Allí, el legislador utiliza los términos jurídicos *final y firme* laxamente. Precisa examinarlos en su correcta perspectiva para entender, de forma clara y precisa, el procedimiento de aprobación de un control de acceso.

Aclaramos que coincidimos con la decisión del Tribunal. Un dictamen *preliminar* municipal sobre control de acceso requiere que se notifique a todas las partes. Incluye hacerles saber a los opositores que ha sido debidamente archivada la correspondiente declaración jurada de los propietarios que adopta tal dictamen preliminar. Ahora bien, no compartimos el razonamiento mayoritario de que el estatuto no exige "*expresamente* [ese] deber afirmativo ...". (Énfasis en el original.) Opinión mayoritaria, pág. 33.

## I

La Asamblea Municipal de San Juan aprobó el 28 de abril de 1993 la Resolución Núm. 75, Serie Núm. 1992–93, para autorizar preliminarmente el control de acceso de la Urbanización College Park, sujeto a ciertos requisitos fijados por la propia Asamblea.[2] La declaración jurada de los propietarios que adopta esa resolución preliminar fue archivada el 14 de junio.

El Municipio de San Juan certificó el cierre el 2 de julio. La Asociación de Vecinos de Altamesa Este, Inc. (en adelante Asociación) presentó el 22 de julio una revisión para impugnarla en el Tribunal Superior, Sala de San Juan.

Dicho foro (Hon. Germán J. Brau),[3] desestimó por falta de jurisdicción al concluir que el término de veinte (20) días para solicitar la revisión se computaba desde la fecha

---

[2] La resolución fue firmada por el Alcalde de San Juan, Hon. Héctor Luis Acevedo, el 17 de mayo de 1993 y notificada a las partes mediante correo certificado el 29 de mayo de 1993.

[3] Unidad Especial de Jueces de Apelaciones.

en que se archivó la referida declaración jurada. La Asociación acudió ante nos.(⁴)

## II

De entrada, hay que señalar que la propia Ley Núm. 21, *supra*, establece, como *regla general*, que "[e]l municipio y la Asociación de Residentes *estarán obligados a notificar por correo certificado a los residentes sus gestiones relacionadas con el proceso del cierre de las calles*". (Énfasis suplido.) 23 L.P.R.A. sec. 64. Además de esta regla general, en lo pertinente, el inciso (d) del Art. 3 dispone:

> Si la determinación del municipio favorece los controles propuestos por la Junta, Consejo o Asociación de Residentes, emitirá un dictamen *final* y autorizará la implantación. Dicho dictamen será *firme* desde la fecha del archivo en el municipio de copia de su notificación. *Si la autorización del municipio modifica o establece restricciones a los controles propuestos por la Junta, emitirá un dictamen preliminar que contendrá las condiciones, cambios o modificaciones bajo los cuales deberá desarrollarse el proyecto teniendo que adoptarse dicho dictamen preliminar mediante declaración firmada por no menos de tres cuartas (3/4) partes de los propietarios, dentro de los quince (15) días siguientes a la fecha de archivo en el municipio de copia de su notificación.* La firma de dichos propietarios estará limitada a un propietario por vivienda.
> *El dictamen preliminar adoptando el control de acceso con las condiciones impuestas por el municipio será firme a la fecha del archivo en el municipio de la declaración antes requerida.* (Énfasis suplido.) 23 L.P.R.A. sec. 64b(d).

Los conceptos "final" y "firme" son completamente distintos en el lenguaje jurídico. *Bolívar v. Aldrey, Juez de Distrito*, 12 D.P.R. 273 (1907). Una determinación *final*

---

(⁴) Alegaron:

"A. Erró el Honorable Tribunal Superior, Sala de San Juan, Unidad Especial de Jueces de Apelaciones, al denegar el Recurso de Revisión presentado ante su consideración por falta de Jurisdicción.

"B. Erró el Honorable Tribunal Superior, Sala de San Juan, Unidad Especial de Jueces de Apelaciones al determinar que el término para revisar se computa desde que se emite el dictamen preliminar." Petición de *certiorari*, pág. 3.

—judicial, administrativa o municipal— es aquella que resuelve totalmente la cuestión litigiosa y contra la cual procede, a petición de parte, la revisión judicial.[5] Por el contrario, es *firme* cuando no se puede atacar o revisar judicialmente, pues han transcurrido los términos concedidos por ley o el foro judicial de última instancia adjudicó la controversia. Examinemos la acepción jurídica de los términos *final y firme*, empleados en los incisos (*d*) y (*e*) transcritos anteriormente.

Existen dos (2) modos para la aprobación de un control de acceso. El municipio emite una determinación favorecedora del cierre *sin reservas*. Según el inciso (*d*), este dictamen es *final* y se convierte en *firme* con el archivo de su notificación. Desde la fecha de ese archivo se cuentan los veinte (20) días para solicitar la revisión judicial.

Según indicamos, por definición, en el argot jurídico una determinación firme no admite revisión. En consecuencia, es forzoso concluir que cuando el legislador consignó que el dictamen advenía *firme*, quiso decir que terminaban los procedimientos ante el municipio. Ahora bien, en cuanto al trámite judicial, con el archivo de la notificación *técnicamente* la determinación adviene *final*, no *firme*, pues en ese momento surge el derecho a una posible revisión judicial.

Por otro lado, la autorización del control de acceso puede ser modificada o condicionada. El estatuto dispone que este dictamen preliminar *no es final*; su validez depende de que sea aprobado mediante declaración jurada firmada por no menos del setenta y cinco por ciento (75%) de los propietarios. Establece, además, que se convierte en *firme* con el archivo de la declaración jurada. Al advenir *firme* es que los opositores pueden impugnarlo en los tribunales. Por lo tanto, en correcto lenguaje jurídico, con el archivo de la declaración jurada se convierte en *final*, no en *firme*.

---

[5] Se puede dar mediante recurso de apelación, revisión, *certiorari*, moción de nuevo juicio, etc.

En síntesis, conforme el inciso (d), y en cuanto al trámite judicial, la determinación que favorece sin reservas un cierre adviene *final* con el archivo de su notificación; mientras que el dictamen preliminar se convierte en *final* con el archivo de la declaración jurada que lo adopta. Por su parte, el inciso (e) indica cuándo comienza el término para solicitar revisión judicial una vez la aprobación municipal es final.

## III

Aclarados estos conceptos y trámites, concluimos que cuando la aprobación del cierre es resultado del trámite de un dictamen preliminar, el estatuto requiere que se notifique el archivo de la declaración jurada a todas las partes para que comiencen, con el archivo de su notificación, los veinte (20) días para acudir al tribunal.

El Art. 3(e) de la Ley Núm. 21, *supra*, dispone:

Toda persona, Asociación de Residentes, urbanizador o desarrollador que no esté de acuerdo con la decisión del municipio sobre una solicitud de permiso de control de acceso, podrá solicitar su revisión judicial *dentro de los veinte (20) días siguientes a la fecha de archivo en el municipio de copia de la notificación* concediendo la autorización o permiso de control de acceso *o del archivo de la declaración jurada adoptando el dictamen preliminar*, según sea el caso. El Tribunal emitirá su decisión dentro de los treinta (30) días siguientes a la fecha de la solicitud de revisión. (Énfasis suplido.) 23 L.P.R.A. sec. 64b(e).

Su lectura revela, *primero*, el uso de la conjunción disyuntiva "o". "El uso de la conjunción disyuntiva 'o' tiene el efecto ... de desvincular las palabras entre las que es usada." R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 353. Véanse: *Mari Bras v. Alcaide*, 100 D.P.R. 506 (1972); *Pueblo v. Febres Colón*, 95 D.P.R. 172 (1967); *Pueblo v. Mantilla*, 71 D.P.R. 36 (1950).

El transcrito inciso (*e*), al establecer la fecha desde la cual se comenzará a contar el término, utiliza la conjunción "o". En consecuencia, los veinte (20) días comienzan a contar desde la fecha del archivo en el municipio de copia de la notificación que concede la autorización o permiso de control de acceso *o* desde la fecha de archivo en el municipio de la notificación del archivo de la declaración jurada que adopta el dictamen preliminar.

*Segundo*, cuando un estatuto es susceptible de dos (2) o más interpretaciones razonables,[6] debe escogerse la que evite, si es posible, entrar en cuestiones constitucionales y acoger la interpretación cónsona con la validez de la ley, esto es, que mantenga su constitucionalidad;[7] rechace la que conduzca al absurdo y, optando por la más racional desde el punto de vista de la finalidad de la ley;[8] mantenga un resultado sensato, distante de exigir cosas inútiles o vanas,[9] y no cierre las puertas de los tribunales a un litigante. Bernier y Cuevas Segarra, *op. cit.*, págs. 487–492. Apliquemos estas reglas de hermenéutica.

El debido procedimiento de ley exige que se le dé a las partes la oportunidad de ser oídas; ello se cumple mediante la correspondiente notificación. En consecuencia, y a los fines de mantener la constitucionalidad de la ley, es forzoso

---

[6] La Asociación de Vecinos de Altamesa Este, Inc. sostiene que los veinte (20) días no se inician desde la fecha de archivo de la declaración jurada, sino desde que se notifique su archivo. Por su parte, el Municipio de San Juan aduce que es desde la fecha de archivo de la declaración.

[7] *Molina v. C.R.U.V.*, 114 D.P.R. 295 (1983); *Vélez v. Municipio de Toa Baja*, 109 D.P.R. 369 (1980); *U.S. Brewers Assoc. v. Srio. de Hacienda*, 109 D.P.R. 456 (1980); *Galarza Soto v. E.L.A.*, 109 D.P.R. 179 (1979); *Hermina González v. Srio. del Trabajo*, 107 D.P.R. 667, 671–673 (1978); *P.S.P. v. E.L.A.*, 107 D.P.R. 590, 598–599 (1978); *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250, 277–278 (1978); *C.H. Vehicle Leasing v. E.L.A.*, 107 D.P.R. 94, 101–102 (1978); *Santa Aponte v. Srio. del Senado*, 105 D.P.R. 750 (1977); *Zachry International v. Tribunal Superior*, 104 D.P.R. 267, 271 (1975); *Colón Molinary v. A.A.A.*, 103 D.P.R. 143, 161 (1974); *Rosa v. Tribunal Superior*, 102 D.P.R. 670, 678 (1974).

[8] *P.R. Tel. Co. v. Martínez*, 114 D.P.R. 328, 341 (1983); *Rodríguez v. Barreto*, 113 D.P.R. 541, 546, 547 (1982), opinión disidente.

[9] *Ortiz Morales v. A.C.A.A.*, 116 D.P.R. 387, 391 (1985).

interpretar que debe notificarse el archivo de la declaración jurada.

Además, la postura del municipio conducirá al absurdo de requerir cosas inútiles. Si no se notifica a los opositores del cierre el archivo de la declaración jurada, ¿cómo pueden saber que el término para impugnar ha comenzado su curso? Ello significaría cerrarles las puertas de los tribunales.

*Recapitulamos*: los veinte (20) días se cuentan desde la fecha en que se archiva en el municipio copia de la notificación del archivo de la declaración jurada que adopta el dictamen preliminar.

## IV

El Municipio de San Juan nunca notificó a la Asociación del archivo de la declaración jurada. Por ende, el término jurisdiccional no comenzó a correr. Fue el 2 de julio de 1993 que, al el Municipio emitir una certificación que autorizaba el cierre, la Asociación advino en conocimiento del archivo de la declaración. El 22 de julio, veinte (20) días después de esa certificación, la Asociación presentó su revisión.

El recurso fue interpuesto en tiempo. No puede alegarse que la Asociación incurrió en falta de diligencia. No procedía la desestimación de la revisión.