ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| S.A. PROPERTIES, S.E.<br><br>Recurrente<br><br>v.<br><br>P.D.C.M. ASSOCIATES, S.E. / CARIBBEAN LUMBER & HARDWARE, INC.<br><br>Recurrido | KLRA202400372 | *Revisión* procedente del Negociado del Cuerpo de Bomberos<br><br>Caso Núm. 4-26-2023<br><br>Sobre: Revisión Administrativa |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de octubre de 2024.

I.

El 14 de marzo de 2023, S.A. Properties, S.E. (S.A. Properties) radicó una Querella ante el Negociado del Cuerpo de Bomberos (Negociado) para que P.D.C.M. Associates, S.E., (P.D.C.M.) proveyera su propio sistema de prevención de incendios ya que, alegadamente, estaba conectado al tanque de agua de S.A. Properties, que sirve a la empresa Mariola, Inc.[1]

El 7 de junio de 2023 el Negociado concedió treinta (30) días a Caribbean Lumber & Hardware, Inc. (Ferretería National Lumber) y al Sr. Rubén Santiago para que presentara un plan de cumplimiento en cuanto al sistema de rociadores automáticos y del sistema de alarma contra incendios.[2] Además, ordenó la desconexión del sistema de rociadores que se encontraba conectado

---

[1] Exhibit I del recurso, pág. 1 (Alega, específicamente, que "SA Properties que es propietario a su vez del edificio donde ubica Mariola Inc., comparten un sistema de prevención de incendios con los Supermercados Mr. Special Inc., La Embotelladora de agua Mariola, **National Lumber de la empresa P.D.C.M. Associates SE**, la Imprenta Rivera y otro inquilino que es un Centro de Cáncer..."). (Énfasis nuestro).
Exhibit I del recurso, pág. 2 ("El edificio de Imprenta Rivera Digital, Cáncer Center y almacén de National Lumber, si está conectado con el sistema de protección que es propiedad de SA Properties (Mariola Water Plant) ya que en la prueba realizada se detectó caída en presión en el cuarto mecánico de SA Properties...").
[2] Exhibit II del recurso, págs. 4-6.

Número Identificador

SEN2024_____

a la bomba y a la cisterna de Mariola Inc., con el propósito de que el referido sistema se conectara a la Ferretería National Lumber.[3]

El 19 de junio de 2023, el Sr. Santiago envió vía correo electrónico una carta al Negociado informándole que la Ferretería National Lumber no está conectada con la cisterna y/o tanque que se encuentra en Mariola, Inc., y que la Ferretería National Lumber cuenta con un sistema independiente. Luego, el 5 de julio de 2023, P.D.C.M. envió una carta vía correo electrónico al Negociado solicitando reconsideración de la orden de desconexión emitida. Se basó en que, siendo la única controversia la alegada conexión de la Ferretería National Lumber a la cisterna y/o tanque de Mariola, Inc. y demostrado que la ferretería no está conectada a dicha cisterna, no existía ninguna razón para que se ordenara la desconexión del sistema de rociadores de P.D.C.M.

Luego de varias misivas cursadas entre las partes,[4] el 18 de diciembre de 2023 P.D.C.M. consignó que le notificó por correo al Departamento de Bomberos y personalmente vía correo electrónico al Ing. Pagán una **solicitud de reconsideración**[5] **"relacionada entre otros asuntos, a la orden de desconexión"**.[6] Alegó que S.A. Properties no tiene legitimación activa en dicho asunto.[7] El 14 de marzo de 2024, P.D.C.M. sostuvo una reunión con el Negociado.[8]

---

[3] *Íd.*

[4] Exhibit III del recurso, pág. 7 (El 8 de noviembre de 2023, S.A. Properties envió una misiva a P.D.C.M. indicando que desconectaría el sistema de rociadores automáticos de la reserva de agua de Mariola Inc. debido al incumplimiento con la orden del 7 de junio de 2023).
Exhibit IV del recurso, págs. 13-14 (El 15 de noviembre de 2023, P.D.C.M. contestó y arguyó que había presentado una solicitud de reconsideración ante el Negociado del Cuerpo de Bomberos. Añadió que la ferretería no estaba conectada al sistema de prevención de incendios. Además, alegó que S.A. Properties utilizó al Negociado del Cuerpo de Bomberos como subterfugio para incumplir el contrato entre S.A. Properties y P.D.C.M. en virtud del cual esta última tendría derecho a utilizar el aludido sistema que ubica en el terreno de la parte recurrente).

[5] Exhibit VI del recurso, págs. 16-18 (El 29 de enero de 2024, S.A. Properties envió una carta al Negociado del Cuerpo de Bomberos en la que adujo que se había incumplido con la orden del 7 de junio de 2023 y que no se le notificó la alegada solicitud de reconsideración).

[6] Exhibit V del recurso, pág. 15.

[7] *Íd.*

[8] Exhibit VII del recurso, pág. 20; Véase además *Alegato en oposición a recurso de revisión judicial y escrito para mostrar causa*, págs. 3-4.

El 26 de marzo de 2024, el Negociado cursó una comunicación a P.D.C.M. y S.A. Properties, en la que les informó que, tras un análisis detallado y exhaustivo de los hechos presentados, dejaba sin efecto la orden de desconexión.[9] Explicó que, no existía evidencia de que el sistema de rociadores estuviese en incumplimiento, como tampoco prueba sobre la conexión de la Ferretería National Lumber al referido sistema.[10] Tras expresar que, "no existe base legal para sostener la posición anteriormente adoptada por el Departamento de Bomberos",[11] dejó "oficialmente sin efecto" la *Orden* del 7 de junio de 2023. **La misiva aludió a la reunión llevada a cabo el 14 de marzo de 2024 para fines de la reconsideración**.[12]

En respuesta y alegando violación a su debido proceso de ley, el 12 y 15 de abril de 2024, S.A. Properties requirió al Negociado copia de la solicitud de reconsideración a la que aludió la comunicación emitida el 26 de marzo de 2024. Pidió, que se dejara sin efecto dicha *Orden* del 26 de marzo de 2024.[13]

Mediante carta cursada el 6 de junio de 2024, notificada el 10, el Negociado le indicó a S.A. Properties que no existía ningún otro trámite pendiente, ya que se había emitido una determinación final.[14] Inconforme, el 10 de julio de 2024, S.A. Properties, recurrió ante nos mediante *Revisión Judicial*. Plantea:

> **Primer error:**
> Cometió error el Negociado del Cuerpo de Bomberos al no notificar sus órdenes y determinaciones de acuerdo a derecho.

---

[9] *Íd.* (El Negociado hace referencia tanto a la solicitud de reconsideración de P.D.C.M., así como a "la reunión llevada a cabo para la reconsideración el día 14 de marzo de 2024".).

[10] *Íd.*

[11] *Íd.*

[12] *Íd.*

[13] Exhibits VIII y IX del recurso, págs. 22-26.

[14] Exhibit X del recurso, pág. 30 (La sucinta carta expresa: "[t]enemos entendido que el edificio donde ubica la compañía que ustedes representan, Mariola Inc., a su vez pertenece a SA Properties. Según me informa nuestra División de Prevención de Incendios, la querella en cuestión fue investigada. Al recibir la querella, se realizó una inspección de lugar, se recopiló información y finalmente se emitió una determinación. Habiendo cumplido con nuestra obligación de atender una querella, emitida la determinación final sobre el particular, de nuestra parte, no resta ningún otro tramite que realizar".).

**Segundo error:**
Erró el Negociado del Cuerpo de Bomberos al celebrar reunión exparte con P.D.C.M. y emitir una determinación a base de lo discutido en dicha reunión sin brindar oportunidad a S.A. Properties de participar a los fines de refutar, aclarar o defenderse de la postura de P.D.C.M.

El 31 de julio de 2024, emitimos una *Resolución* concediéndole un término de diez (10) días a S.A. Properties, para mostrar causa por la cual no debíamos desestimar el recurso por carecer de jurisdicción para atenderlo. El 12 de agosto de 2024, S.A. Properties presentó *Escrito para mostrar causa*. En síntesis, sostiene que, aunque es consciente de que el Negociado no notificó un dictamen final conforme a derecho del que pueda acudirse en revisión, precisamente el objeto de su recurso es que revisemos la decisión del Negociado de no reconsiderar la *Orden* del 26 de marzo, fundado en que no existía ningún otro trámite pendiente, ya que se había emitido una determinación final.

El 9 de septiembre de 2024 compareció P.D.C.M. mediante ALEGATO EN OPOSICIÓN A RECURSO DE REVISIÓN JUDICIAL Y AL ESCRITO PARA MOSTRAR CAUSA. Es su contención que S.A. Properties no es la persona objeto de la *Orden* que emitió el Negociado, ni era parte adversamente afectada por dicha *Orden*, por lo que carece de legitimación activa para recurrir ante nos.

II.

A.

Atendamos en primer lugar el planteamiento que nos hace P.D.C.M. en su alegato en oposición sobre la carencia de legitimación activa de S.A. Properties para incoar el presente recurso.

El razonamiento de P.D.C.M. para sostener que S.A. Properties no tiene legitimación activa para incoar la presente revisión judicial descansa en que las partes conocen que la Ferretería National Lumber no está conectada a la cisterna y que la

Querella presentada por S.A. Properties es un claro acto de mala fe, pues se basa en la alegación falsa y frívola de que la Ferretería National Lumber estaba conectada a la cisterna. Indica que la reunión que sostuvo con el Negociado no era de la incumbencia ni responsabilidad de S.A. Properties, ya que no le afectaba, pues en ella se discutió la *Orden* que le fuere dirigida a dicha entidad, a saber, el sistema de prevención de incendios de P.D.C.M., aclarar qué disposiciones de ley se estaban violentando, si alguna, y asegurar su cumplimiento con los requisitos que exigen los Códigos y Reglamentos del Negociado. Su planteamiento es totalmente inmeritorio. Veamos por qué.

B.

Cuando una persona alega, mediante un recurso de revisión judicial, ser afectada personalmente por alguna actuación de una agencia,[15] es indispensable cumplir con las normas relativas a la legitimación activa.[16] La Sec. 4.2 de la LPAU,[17] establece que, para tener legitimación activa para solicitar revisión judicial es necesario: (1) ser una parte adversamente afectada por una orden o resolución final de una agencia, (2) haber agotado todos los remedios provistos por la agencia o por el organismo administrativo y (3) recurrir dentro del término establecido.[18]

La frase "adversamente afectada", conlleva la existencia de un interés sustancial en la controversia, basado en el sufrimiento de una lesión o en un daño particular causado por la acción administrativa objeto del recurso de revisión judicial. El daño tiene que ser claro, específico y no puede ser abstracto, hipotético o especulativo. Así, el tribunal se asegura que tiene ante sí, una

---

[15] *Sierra Club* v. *Junta de Planificación,* 203 DPR 596 (2019); *Centro Unido Detallistas* v. *Com. Serv. Pub.,* 174 DPR 171 (2008).

[16] Demetrio Fernández Quiñonez, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme* 140 (3ra ed., Colombia, Ed. Forum, 2013).

[17] 3 LPRA § 9672.

[18] *Oficina para la Reglamentación de la Industria Lechera* v. *El Farmer, Inc.*, 204 DPR 229 (2020); *Fund. Surfrider y otros* v. *ARPE,* 178 DPR 563, 575-576 (2010).

controversia genuina entre partes opuestas con un interés real de obtener un remedio que afecte sus relaciones jurídicas.[19] En ese sentido, y para efectos del procedimiento administrativo, una parte es: (1) **toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción,** así como: (2) la persona que se le permita intervenir o participar; (3) **la persona que haya radicado una petición para la revisión o cumplimiento de una orden**; (4) o que sea designada como parte en dicho procedimiento.[20] De manera que, es parte en el proceso de revisión judicial, el promovido o el **promovente**.

C.

En este caso, no hay duda alguna de que S.A. Properties cuenta con legitimación activa para presentar este recurso, sencillamente porque es parte promovente de la Querella ante el Negociado. El proceso que desembocó en la *Orden* inicial emitida el 7 de junio de 2023 ordenándole a la Ferretería National Lumber desconectarse de la cisterna de S.A. Properties, así como la *Orden* emitida el 26 de marzo de 2024, mediante la cual se dejó sin efecto la orden de desconexión, fueron el resultado y consecuencia directa de la Querella presentada por S.A. Properties. Siendo S.A. Properties la parte promovente de la acción administrativa, tiene plena legitimación activa para cuestionar cualquier determinación final que emita la agencia al adjudicar su Querella.

III.

A.

Acometamos la tarea de justipreciar el planteamiento que nos hace S.A. Properties a través de su recurso.

En su primer señalamiento, S.A. Properties nos advierte que el Negociado erró al no notificar sus órdenes y determinaciones de

---

[19] *Fund. Surfrider y otros* v. 178 DPR, págs. 575-576.
[20] 3 LPRA § 9603.

acuerdo a derecho. Sin embargo, afirma que es precisamente de esa notificación defectuosa de la resolución negándose a reconsiderar, que recurre ante nos. Ya el Tribunal Supremo se ha expresado en torno a lo que procede ante una notificación defectuosa de una adjudicación administrativa. En *Horizon* v. *Jta. Revisora, RA Holdings*,[21] el referido Foro expuso:

> Así las cosas, a una parte que no fue notificada adecuadamente de su derecho de revisión, no se le pueden oponer los términos para recurrir. Hemos reconocido en estos casos de notificaciones erróneas relacionados con la revisión de una determinación administrativa, que se le debe conceder tiempo a la parte perjudicada para que ejerza su derecho de revisión judicial como corresponde **o atender el recurso de revisión ya presentado**, siempre que no haya mediado incuria. (citas omitidas).

También en *Molini Gronou* v. *Corp. P.R. Dif. Púb.*,[22] el máximo Foro judicial se expresó en similares términos. Allí dijo, que, "[e]l remedio que hemos reconocido en estos casos de notificaciones erróneas relacionados con la revisión de una determinación administrativa consiste en concederle tiempo a la parte perjudicada para que ejerza su derecho de revisión judicial como corresponde o atender el recurso de revisión ya presentado, si no ha mediado incuria".[23]

Cónsono con lo anterior, si bien la notificación de la negativa del Negociado a reconsiderar es evidentemente defectuosa, S.A. Properties ejerció su derecho de revisión oportunamente y como tal, así lo atenderemos.

B.

En su segundo señalamiento de error, S.A. Properties sostiene que el Negociado cometió error al celebrar reunión exparte con P.D.C.M. y emitir una determinación a base de lo discutido en dicha reunión, sin brindarle oportunidad de participar a los fines de

---

[21] *Horizon* v. *Jta. Revisora, RA Holdings*, 191 DPR 228 (2014).
[22] *Molini Gronou* v. *Corp. P.R. Dif. Púb.,* 179 DPR 674 (2010).
[23] *Íd.*

refutar, aclarar o defenderse de la postura de P.D.C.M. Tiene razón. Veamos por qué.

No debe haber duda de que la garantía a un debido proceso de ley se extiende a los procedimientos adjudicativos de las agencias administrativas, pues en ellos suele interferirse con los intereses de libertad y propiedad de los individuos.[24] En cuanto a la notificación de una moción de reconsideración en el ámbito del procedimiento civil, en *Lagares* v. *E.L.A.*,[25] el Tribunal Supremo determinó que, aunque la notificación a las partes dentro del término fijado para presentar la moción no es de carácter jurisdiccional, sí es de cumplimiento estricto. Explicó, que dicha notificación les brinda la oportunidad a las otras partes del caso a expresarse, si así lo desean, y, además, les alerta sobre la posibilidad de que el término jurisdiccional para presentar el recurso de revisión sea interrumpido.

A raíz del caso *Lagares*, la Asamblea Legislativa enmendó la Regla 47 de Procedimiento Civil[26] para incorporar el término de quince (15) días de cumplimiento estricto para notificar una moción de reconsideración a las demás partes en el pleito.[27] Más adelante, en *Ortiz* v. *Adm. Sist. de Retiro Emp. Gob.*,[28] el Tribunal Supremo aplicó dicha norma a la sección 3.15 de la *Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico*, Ley 170 de 12 de agosto de 1988,[29] que regula la moción de reconsideración en el ámbito administrativo.[30]

---

[24] *Almonte et al.* v. *Brito*, 156 DPR 475, 481 (2002).
[25] *Lagares* v. *E.L.A.*, 144 DPR 601, 618-619 (1997).
[26] R. P. Civ. 47, 32 LPRA Ap. III, R. 47.
[27] *Febles* v. *Romar Pool Const.*, 159 DPR 714 (2003).
[28] *Ortiz* v. *Adm. Sist. de Retiro Emp. Gob.*, 147 DPR 816 (1999).
[29] 3 LPRA § 2165 (derogada 2017).
[30] La Sección 3.14 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 38 del 30 de junio de 2017, según enmendada (LPAU), dispone:
      La orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley.

Aunque la Regla 47 de Procedimiento Civil tiene sus notables diferencias con la Sección 3.15 de la LPAU, se determinó que la aplicación de esa norma a esta sección es compatible con su filosofía y propósitos.[31] El Tribunal Supremo de Puerto Rico ha recalcado la importancia que tiene en el derecho procesal, sea este administrativo o judicial, la notificación a las partes y el hecho de que ésta sea adecuada.[32]

C.

Como relacionamos previamente, a raíz de la Querella interpuesta por S.A. Properties, el 7 de junio de 2023 el Negociado le ordenó a Caribbean Lumber & Hardware, Inc., -empresa cuyo local en la que está ubicada pertenece a P.D.C.M.-, que desconectara el sistema de rociadores de la bomba y cisterna de Mariola Inc.- empresa cuyo edificio pertenece a la querellante S.A. Properties-. Expuso que la "orden tiene como objetivo que los sistemas de rociadores sean conectados al sistema de rociadores de National Lumber and Hardware, tal como se establece [en] los códigos, normas aplicables...".[33]

Así las cosas, el 26 de marzo de 2024, aludiendo a una reunión llevada a cabo el 14 de marzo de 2024 para discutir una alegada "reconsideración", el Negociado cursó a S.A. Properties una

---

La orden o resolución advertirá el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho en el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos.

La agencia deberá especificar en la certificación de sus órdenes o resoluciones los nombres y direcciones de las personas naturales o jurídicas a quienes, en calidad de partes, les fue notificado el dictamen, a los fines de que estas puedan ejercer efectivamente el derecho a la revisión judicial conferido por ley.

La agencia deberá notificar con copia simple por correo ordinario o electrónico a las partes, y a sus abogados de tenerlos, la orden o resolución a la brevedad posible, y deberá archivar en autos copia de la orden o resolución final y de la constancia de la notificación. Una parte no podrá ser requerida a cumplir con una orden final a menos que dicha parte haya sido notificada de la misma.

[31] *Febles* v. 159 DPR, pág. 721.

[32] Véase *IM Winner, Inc.* v. *Mun. de Guayanilla*, 151 DPR 30 (2000); *Colón Torres* v. *A.A.A.*, 143 DPR 119 (1997); *Asoc. Vecinos de Altamesa Este* v. *Mun. San Juan*, 140 DPR 24 (1996); *Arroyo Moret* v. *F.S.E.*, 113 DPR 379 (1982); *Berríos* v. *Comisión de Minería*, 102 DPR 228 (1974).

[33] Exhibit III del recurso, pág. 9.

carta notificándole que dejaba sin efecto su *Orden* de desconexión emitida el 7 de junio de 2023. Enterada de esta forma de que se había solicitado reconsideración de la *Orden* del 7 de junio, el 12 de abril de 2024 y/o el 14 de abril, S.A. Properties requirió al Negociado le facilitara copia de la solicitud de reconsideración a la que aludió en la *Orden* emitida el 26 de marzo para dejar sin efecto la *Orden* del 7 de junio de 2023. El 6 de junio de 2024, notificada el 10, el Negociado adujo no tener nada que proveer por haberse emitido ya una determinación final.[34]

Ciertamente, al examinar el expediente a la luz de las alegaciones del propio recurrente, S.A. Properties, es evidente que la solicitud o cualquier gestión llevada a cabo por P.D.C.M. ante el Negociado para que reconsiderara su *Orden* del 7 de junio de 2023, no fue notificada a S.A. Properties. Ello así, el Negociado no podía reconsiderar su dictamen sin que se notificara la solicitud de reconsideración a S.A. Properties para que esta pudiera expresarse y, además, estuviera advertido de la posibilidad de que el término jurisdiccional para presentar un recurso de revisión fuera interrumpido. Al no hacerlo, la actuación de dicha Agencia recurrida fue inoficiosa a los fines del decursar de los términos para solicitar revisión judicial. Procede, por tanto, la revocación de la *Orden* recurrida.

IV.

Por los fundamentos antes expuestos, se revoca el dictamen recurrido y se devuelve el caso al Foro Administrativo para la

---

[34] Exhibit X del recurso, pág. 30 (La sucinta carta expresa: "[t]enemos entendido que el edificio donde ubica la compañía que ustedes representan, Mariola Inc., a su vez pertenece a SA Properties. Según me informa nuestra División de Prevención de Incendios, la querella en cuestión fue investigada. Al recibir la querella, se realizó una inspección de lugar, se recopiló información y finalmente se emitió una determinación. Habiendo cumplido con nuestra obligación de atender una querella, emitida la determinación final sobre el particular, de nuestra parte, no resta ningún otro tramite que realizar".).

continuación de los procedimientos de conformidad con lo aquí dispuesto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones