Feliciano Acevedo, Jueza Ponente
*814 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, Plaza Las Américas, Inc., en adelante parte interventora-recurrente, y nos solicita que revisemos la Resolución de la Junta de Planificación (en adelante Junta) notificada el 4 de septiembre de 2002 que autorizó un proyecto institucional solicitado por el Municipio de San Juan en los predios del Complejo Deportivo del referido municipio. Le asignamos a dicho recurso el número KLRA-2003-00108.
Asimismo, la recurrente nos solicitó la revisión de la Resolución de 3 de febrero de 2003 emitida por la Administración de Reglamentos y Permisos (en adelante A.R.P.E.) que autorizó un anteproyecto para la construcción de un edificio contiguo al Coliseo Roberto Clemente en los predios del Complejo Deportivo del Municipio de San Juan en la Avenida F. D. Roosevelt: A éste recurso le asignamos el número KLRA-2003-00166.’
A petición de la recurrente y debido a que ambas solicitudes de revisión atienden diferentes etapas de un mismo proyecto, el 3 de abril de 2003 consolidamos ambos recursos bajo el número KLRA-2003-00108. Procedemos, entonces, a resolverlos conjuntamente. Por los fundamentos que exponemos a continuación, se expide el auto solicitado y se confirman las Resoluciones recurridas.
I
El 19 de febrero de 2002, el Gobierno Municipal de San Juan presentó una solicitud de consulta de ubicación ante la Junta para la evaluación de una propuesta de proyecto institucional ha ubicarse en los predios del Complejo Deportivo de la Capital, propiedad del Municipio de San Juan, en la Avenida F. D. Roosevelt. El proyecto, luego de ser enmendado, consiste de la construcción de un edificio a ser dedicado a Sala de Exhibiciones (“exposition center”), anexo al Coliseo Roberto Clemente y otro edificio de estacionamiento con capacidad para proveer 1,457 estacionamientos. En Resolución fechada el 29 de abril de 2002, la Junta ordenó al Municipio de San Juan rediseñar la propuesta para que la misma cumpliera con los espacios de estacionamiento requeridos según la reglamentación vigente. Posteriormente, el Municipio de San Juan presentó una enmienda al proyecto que contenía la provisión de 1,457 espacios de estacionamiento.
Luego de varios trámites procesales que incluyen la radicación ante la Junta de Calidad Ambiental, un *815 Formulario de Evaluación Ambiental y su correspondiente enmienda, la Junta de Calidad Ambiental analizó el proyecto y determinó que el mismo cumplía con lo dispuesto en el Artículo 4(c) de la Ley sobre Política Pública Ambiental, Ley Núm. 9 de 18 de junio de 1970, infra.
En Resolución notificada el 4 de septiembre de 2002, la Junta aceptó la intervención de la parte interventora recurrente y autorizó el antes mencionado proyecto institucional; De esta Resolución recurre la interventora ante nos en el caso KLRA-2003-00108. Posterior a la notificación de dicha Resolución, la parte interventora-recurrente solicitó reconsideración a la Junta, mientras que ¿1 Gobierno Municipal de San Juan solicitó dos términos para replicar a la solicitud de reconsideración. El 19 de diciembre de 2002, la Junta de Planificación prorrogó por treinta (30) día el término para resolver la solicitud de reconsideración presentada por la interventora. La parte interventora-recurrente presentó una “Solicitud Urgente Para que se Enmiende Resolución Nunc Pro Tunc” el 20 de diciembre de 2003. Finalmente, el 21 de enero de 2003, la Junta declaró no ha lugar la solicitud de reconsideración.
Mientras tanto, el 14 de noviembre de 2002, el Gobierno Municipal de San Juan presentó ante A.R.P.E. un anteproyecto para su aprobación. El 3 de febrero de 3003, A.R.P.E. aprobó el anteproyecto sometido por el Municipio de San Juan en Resolución notificada él 28 de febrero de 2003.
Inconforme de ambas Resoluciones, acude ante nos la interventora-recurrente. En síntesis, alega que la Junta y ARPE erraron al autorizar un proyecto que tiene un déficit serio de estacionamientos, dejando con ello de'cumplir con; el Reglamento de Zonificación, una Resolución previa de la propia Junta de Planificación y con la Ley Núm. 183 de 17 de agosto de 2002.
Además, la recurrente arguye que A.R.P.E. asumió jurisdicción prematuramente y que autorizó un anteproyecto de construcción sin contar con el endoso de la Autoridad de Carreteras, por el hecho de que el endoso originalmente presentado había expirado.
En cuanto a la Resolución de la Junta, la recurrente alega que se afectó su derecho propietario sin ser escuchado y por lo tanto se le violó el derecho a un debido proceso de ley; que el proyecto autorizado es distinto al que fue objeto de la Evaluación Ambiental avalada por la Junta de Calidad Ambiental y que no se sometió una Declaración de Impacto Ambiental ante la Junta de Calidad Ambiental.
II
El debido proceso de ley posee dos (2) vertientes: procesal y sustantiva. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541 (1984). De acuerdo con el debido proceso de ley en su vertiente procesal, un procedimiento que interfiera con los intereses de libertad o propiedad de las personas deber ser justo y equitativo. Id. a las págs. 543-546; Álvarez Elvira v. Arias Ferrer, 156 D.P.R. _ (2002), 2002 J.T.S. 37; López Vives v. Policía de P.R., 118 D.P.R. 219, 230-231 (1987). Por su parte, la vertiente sustantiva del debido proceso de ley sirve como salvaguarda de los derechos fundamentales de las personas. Rodríguez Rodríguez v. Estado Libre Asociado, 130 D.P.R. 562, 576 (1992); U.S. v. Carolene Products, 304 U.S. 144, 152-153 (1938).
En el ámbito del derecho administrativo, las Constituciones del Estado Libre Asociado y de los Estados Unidos requieren que toda acción administrativa que intervenga con la vida, libertad o propiedad, cumpla con el debido proceso de ley. Constitución E.L.A. Art. II, sec. 7; Const. E.U., enmiendas 5 y 14; López y otros v. Asoc. Taxis de Cayey, 142 D.P.R. 109, 113 (1996); Asoc. Vec. Altamesa Este v. Mun. San Juan, 140 D.P.R. 24, 34 (1996); Asoc. Residentes v. Montebello Dev., 138 D.P.R. 412, 421 (1995). La notificación es requisito indispensable para la validez del procedimiento administrativo de carácter adjudicativo en sus distintas etapas. Su incumplimiento violenta el derecho a ser oído, al cual está indisolublemente ligado, ya que el mismo implica haber sido notificado. Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 366, (2da ed. 2001).
*816 El Tribunal Supremo también ha protegido de manera consecuente el derecho a la notificación de órdenes, resoluciones y sentencias, “ya que sirve un propósito lógico y sabio en la administración de la justicia”. Asoc. Vec. Altamesa Este v. Mun. San Juan, supra, a la pág. 34. La notificación de las resoluciones administrativas concede a las partes la oportunidad de tomar conocimiento real de la determinación tomada por la instancia adjudicativa y otorga a las personas cuyos derechos pudieran quedar afectados la oportunidad de determinar si ejercen los remedios que les reserva la ley para impugnar la determinación tomada. Asoc. Vec. Altamesa Este v. Mun. San Juan, supra, a la pág. 34. Se ha resuelto que “el derecho a cuestionar una determinación mediante revisión judicial, al ser expresamente provisto por estatutos, pasa a formar parte del debido proceso de ley”. Asoc. Vec. Altamesa Este v. Mun. San Juan, supra, a la pág. 34. Al referirse a la importancia de la notificación de una resolución administrativa, nuestro Tribunal Supremo ha expresado con énfasis que “[n]o podemos permitir que un eslabón de tanta envergadura en el debido proceso de ley tome o adopte una configuración laxa basada en una mera conclusión especulativa de que se tenía conocimiento de la decisión administrativa”. Asoc. Residentes v. Montebello Dev., supra, a la pág. 421. Por el contrario, la notificación de una resolución administrativa es un imperativo constitucional, “resultando por tanto indispensable y crucial el que se notifique adecuadamente dicha determinación a todas las partes cobijadas por tal derecho” Asoc. Vec. Altamesa Este v. Mun. San Juan, supra, a la pág. pág. 34.
in
Es conocido que a los tribunales se nos impone como principio jurisprudencial que "las conclusiones e interpretaciones de los organismos especializados merecen gran consideración y respeto y su revisión se limita a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituye un abuso de discreción". Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). Sabido es que a su determinación le asiste una presunción dé validez y corrección y le corresponde a quien pretenda impugnarla el peso de la prueba. A.D.C.V.P. v. Tribunal Superior, 101 D.P.R. 875 (1979); M.T.V. Orthodontics v. Negociado de Seguridad de Empleo, 115 D.P.R. 183 (1984); Srio. D.A.C.O. v. Junta de Condómines Condominio Martí, 121 D.P.R. 807 (1988); De Jesús Cotto v. Departamento de Servicios Sociales de Puerto Rico, 123 D.P.R. 407 (1989), y Autoridad de los Puertos de Puerto Rico v. Municipio de San Juan, 123 D.P.R. 469 (1989). Pese a que reconocemos el peritaje de la agencia al analizar asuntos como el que nos ocupa, y esa consideración no nos permite sustituir el criterio de ésta si está sostenido por prueba en el expediente administrativo, ello no implica que abdiquemos nuestra función revisora. Bajo el crisol estrecho de la revisión judicial de las determinaciones administrativas, procede determinar si el dictamen de la agencia resultó ser irrazonable, ilegal o medió abuso de discreción.
La Ley de Procedimiento Administrativo Uniforme y nuestra jurisprudencia también nos imponen la obligación de examinar la totalidad de la prueba sometida a la agencia. En cuanto a la determinación de "sustancialidad" de la prueba, se ha expresado que es evidencia sustancial aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión", Hilton Hotel Internationals v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953). De esta forma, la sustancialidad de la evidencia "se traduce en adecuacidad y ésta, a su vez, se relaciona con la razonabilidad de la determinación, expresándose, como consecuencia que los tribunales no están autorizados a intervenir con las determinaciones de la agencia en ausencia de una demostración de que son irrazonables o arbitrarias". Debién v. Junta de Contabilidad, 76 D.P. R. 96 (1954); Murphy Bernabé v. Tribunal Superior, supra.
Para determinar si la prueba presentada es suficiente de manera tal que la actuación de la agencia no constituya una decisión arbitraria, debe asegurarse de haber evaluado justamente toda la pmeba presentada. Ello necesariamente dependerá de una multitud de factores y circunstancias. Obviamente, una decisión administrativa no resulta arbitraria porque exista prueba conflictiva de la cual puedan inferirse conclusiones distintas a la que la agencia adopta. Junta de Relaciones del Trabajo v. Línea Suprema, 89 D.P.R. 846 (1964). Tampoco porque la agencia haya escogido una de entre varias interpretaciones razonables. Demetrio Fernández Quiñones, Derecho Administrativo y Ley de'Procedimiento Administrativo Uniforme, 530-531 (1993).
*817 Por otra parte, se ha dicho que para sostener la determinación de hechos de una agencia se requiere algo más que una mera "scintilla" de evidencia, pero menos qué una preponderancia de la prueba. No obstante, la calidad y cantidad de la prueba son pertinentes a la evaluación, de manera que: "[fjalta de calidad y cantidad en la evidencia pueden y deben mover al tribunal en revisión a examinar con detenimiento las bases y fundamentos legales de la decisión de la agencia. Ello, sin lugar a dudas, causará una interacción entre cuestiones de derecho y cuestiones de hecho". Id. a la pág. 543.
Para que un tribunal pueda decidir que la determinación de una agencia no está basada en evidencia sustancial, se debe demostrar que hay otra prueba en el expediente administrativo que claramente reduzca o menoscabe el peso de la prueba que sostiene la determinación administrativa, a tal punto que lleve al tribunal a concluir que la agencia fue arbitraria y que su determinación no responde a una evaluación razonable de toda la prueba que tuvo ante su consideración. Hilton Hotels v. Junta de Salario Mínimo, supra a la pág. 686. Esta norma permite al tribunal revisor actuar dentro de los parámetros de deferencia debida a la agencia, sin caer en el error de avalar su determinación ciegamente.
IV
En virtud de la Ley Orgánica de la Junta de Planificación, Ley Núm. 75 de 24 de junio de 1975, 23 L.P.R. A. secs. 62-63j, se reorganizó la ya existente Junta de Planificación de Puerto Rico para "fortalecer aquellas funciones de la misma relacionadas con la orientación, coordinación e integración de la política pública sobre el desarrollo integral del país, la investigación e información y el asesoramiento, tanto al Gobernador como a la Asamblea Legislativa, los municipios y las agencias gubernamentales" (Exposición de Motivos de la Ley Núm.75 del día 24 de junio de 1975). "Las funciones principales de la Junta de Planificación y los instrumentos que se le confieren, van encaminados a que este organismo pueda coordinar e integrar los esfuerzos de los distintos sectores gubernamentales de forma que se logre un desarrollo integral y balanceado de nuestra sociedad." Ibid. Cónsono con esto, la Junta adoptó el Reglamento de Zonificación para guiar el uso y desarrollo de los terrenos en Puerto Rico. Mediante zonificación, se establecen las normas esenciales sobre cómo y dónde deben ubicarse las múltiples actividades sociales y económicas del país. Asociación de Residentes de Park Side, Inc. y otros v. Junta de Planificación y Telefónica de P.R., 149 D.P.R. 300, 99 J.T.S. 155, 190.
Para la más completa solución de la controversia es necesario incluir las disposiciones de los Reglamentos aplicables al trámite administrativo que se impugna por la recurrente. En primer lugar, el Reglamento de Planificación Número 12 vigente (en adelante Reglamento de Zonificación) establece en el Tópico 3 Sección 15.04 que posterior a la aprobación de una consulta deberá radicarse la solicitud de permiso de construcción:

"Cuando se radique, bajo las disposiciones de este reglamento, una solicitud de consulta o anteproyecto para algún edificio o estructura, cuya revisión por los funcionarios autorizados establezca que la misma cumple con las leyes y reglamentos aplicables, se expedirá la correspondiente notificación de conformidad con el proyecto, como etapa adelantada a la anterior presentación de la solicitud de permiso de construcción requerida. Bajo ninguna circunstancia, deberá interpretarse que esta recomendación favorable implique la aprobación del proyecto de construcción final en sí, ni que se autorice iniciar obras de construcción de clase alguna...

Por otro lado, en cuanto a los espacios de estacionamiento necesarios, la sección 74.03.08 del Tópico 9 del Reglamento de Zonificación dispone:

“74.03 Provisión de Espacios de Estacionamiento de Vehículos- Los espacios mínimos de estacionamiento de vehículos a proveerse se determinarán según se indica a continuación:

*818
8. Escuelas comerciales o vocacionales, colegios o universidades, auditorios, salones de convenciones, teatros, cinematógrafos, estudios, estadios, hipódromos, canódromos, velódromos, redondeles de patinaje, galleras, parques de recreación comercial, funerarias, o cualquier otro sitio similar de reunión pública. Por lo menos un (1) espacio por cada cinco (5) asientos, o parte de éstos que se provea para tales fines”.

Por su parte, la sección 74.01 04 del antes mencionado Reglamento establece que: “(4). [ejn los casos de ampliaciones a edificios, la nueva área de estacionamiento requerida se calculará tomando en cuenta los usos existentes y los propuestos para la ampliación del edificio ”. (Énfasis suplido).
De otra parte, la Administración de Reglamentos y Permisos es un organismo adscrito a la Junta de Planificación y creado por la Ley Núm. 76 de 24 de junio de 1975, mejor conocida como la “Ley Orgánica de la Administración de Reglamentos y Permisos”'23 L.P.R.A. § 71, et seq. Entre las funciones más importantes de A.R.P.E. está la de aplicar y velar por el cumplimiento de sus propios reglamentos, de los Reglamentos de Planificación que haya adoptado o adopte la Junta de Planificación de Puerto Rico para el desarrollo, subdivisión y uso de terrenos y para la construcción y uso de edificios, así como el cumplimiento de toda ley estatal, ordenanza, o reglamentación de cualquier organismo gubernamental que regule la construcción en Puerto Rico. 23 L.P.R.A. § 71d(p). Un examen de dicha legislación nos demuestra que el legislador tuvo la intención de conceder amplia discreción a A.R.P.E. sobre la formulación y mantenimiento de la política pública a seguir con relación al trámite para la concesión y denegación de permisos. También quiso proveer los remedios legales necesarios para que A.R.P.E. pueda velar por el cumplimiento efectivo de sus determinaciones.
Entre las diversas etapas encaminadas a la aprobación de un proyecto de construcción en las que A.R.P.E. interviene, debe tenerse en cuenta que la etapa de consideración de una solicitud para la aprobación de un anteproyecto es una preliminar. El Reglamento de Zonificación define anteproyecto como una “[fjorma preliminar de un plano de construcción de obras, así como de estructuras, que se somete a la ARPE para determinar si cumple con las leyes y reglamentos aplicables ”. Por otro lado, el Reglamento de Procedimientos Adjudicativos de A.R.P.E. de 18 de mayo de 2002 dispone lo siguiente en la sección 7.07:
“Solicitudes para proyectos autorizados por la Junta de Planificación- La autorización de un proyecto expedida por la Junta de Planificación, mediante el mecanismo de consulta de ubicación, no releva a la parte de completar la etapa subsiguiente o etapas operacionales de proyecto ante A.R.P.E. La solicitud para esa etapa podrá ser radicada en A.R.P.E. para evaluación, pero no se expedirá la autorización o permiso solicitado hasta que la decisión de la Junta de Planificación advenga final y firme ”. (Énfasis suplido).
El Reglamento para la Certificación de Obras y Permisos, Reglamento de Planificación Número 12, define en su sección 2.00(10) el término endoso como la aprobación favorable de un organismo gubernamental concernido con relación a un proyecto de construcción pudiendo ésta ser precisa o de carácter general o estar condicionada al cumplimiento de determinados requisitos, suministros de datos u otras gestiones. Deberá incluirse los correspondientes endosos preliminares en los anteproyectos de construcción a certificarse, en las solicitudes sobre permisos de urbanización y en las solicitudes de desarrollo preliminar. Véase Reglamento de Planificación Núm. 12, secciones 10:00, 11:00 y 12:00. En particular, la Sección 10.03 de dicho Reglamento indica que lo se requiere que exista es prueba de que el proyecto contó con el endoso preliminar de las agencias administrativas concernidas y que se presentaron las recomendaciones correspondientes.
Por su parte, la Ley sobre Política Pública Ambiental, Ley Núm. 9 de 18 de junio de 1970, 12 L.P.R.A. sees. 1121 et seq. (2003), dispuso entre sus fines, los siguientes: “(a) Establecer una política pública que estimule una deseable y conveniente armonía entre el hombre y su medio ambiente; (b) fomentar los esfuerzos que impedirían o eliminarían daños al ambiente y la biosfera y estimular la salud y el bienestar del hombre; (c) enriquecer la comprensión de los sistemas ecológicos y fuentes naturales importantes para Puerto Rico.... ”. Id., *819 sec. 1122. Asimismo, la Ley Núm. 9 expone entre sus principios que el Estado habrá de “...utilizar todos los medios y medidas prácticas, incluyendo ayuda técnica y financiera, con el propósito de alentar y promover el bienestar general, para crear y mantener las condiciones bajó las cuales el hombre y la naturaleza puedan existir en armonía productiva y cumplir con las necesidades sociales y económicas y cualesquiera otras que puedan surgir con las presentes y futuras generaciones de puertorriqueños. ” Id., see. 1123.
Además, el artículo de la Ley Núm. 9, supra, dispuso que todas las instrumentalidades, agencias, departamentos, corporaciones públicas y municipios del Estado Libre Asociado, están compelidos a interpretar, implementar y administrar las leyes y reglamentos del país de forma estricta con la política pública ambiental enunciada. íd., see. 1124. Allí se estipuló que previo a efectuarse cualquier acción, o promulgarse cualquier decisión gubernamental que afecte “significativamente la calidad del medio ambiente”, se tendría que emitir una declaración escrita y detallada en tomo al impacto ambiental, entre otras cosas. Véase, Art. 4 (c), 12 L.P.R. A. see. 1124; Fed. Pese. Playa Picúas v. J.P., 148 D.P.R. 406 (1999).
En síntesis, el proceso ambiental comienza con la preparación de una Evaluación Ambiental por parte de la agencia proponente. A base de este documento, la agencia habrá de determinar si es necesario preparar una declaración de impacto ambiental preliminar, o una determinación de impacto ambiental no significativo. “...Si [la agencia] determina que la acción propuesta no afectará significativamente el ambiente, la agencia proponente lo consignará en una Declaración de Impacto Ambiental No-Significativo que deberá cumplir con los requisitos de la Sección 4 del Reglamento.... ”. Mun. de Loíza v. Sucesiones de Marcial Suárez y otros, 154 D.P.R. _, 2001 J.T.S. 87, a la pág. 1372.
El procedimiento que revisamos se inicia ante la Junta de Planificación mediante una consulta de ubicación. Este mecanismo procesal es un instrumento para el ejercicio por la Junta de su función de planificar los usos de terrenos. Contrario a los Planes de Usos de Terrenos y demás instrumentos de planificación, sin embargo, la consulta de ubicación permite a la Junta decidir sobre propuestas de usos de terrenos concretas, referidas a terrenos particularizados. Reglamento de Procedimientos Adjudicativos de la Junta de Planificación de 12 de noviembre de 1999, sección 2.00(b). Toda mejora pública, sea en zona zonificada o no zonificada, requiere una consulta de ubicación, a menos que se haya eximido por resolución específica de la Junta. Reglamento de Adjudicación, Secs. 3.03 y 4.02. En resumen, el Reglamento dé Procedimientos Adjudicativos de la Junta, en su Sección 2.00 define Consulta de Ubicación como sigue:

“Consulta de Ubicación- Es el procedimiento ante la Junta de Planificación, para que evalúe, pase juicio y tome la determinación que estimé pertinente, sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable. en áreas zonificadas, pero que las disposiciones reglamentarias proveen para que se consideren por la Junta de Planificación...Esta consulta se identificará, como pública o privada, dependiendo de quién la origine... ”.

A su vez, una Evaluación Ambiental es un documento ambiental presentado por una agencia proponente para que la Junta de Calidad Ambiental determine si la acción propuesta tendrá o no un posible impacto ambiental significativo. La Regla 241 del Reglamento de la Junta de Calidad Ambiental Para el Proceso de Presentación, Evaluación y Trámite de Documentos Ambientales, con vigencia de 28 de octubre de 1999, establece que las Evaluaciones Ambientales son aplicables a:

“Toda agencia proponente deberá presentar una Evaluación Ambiental ante la Junta de Calidad Ambiental referente a cualquier acción cubierta por este Reglamento, a menos que haya determinado de antemano presentar una Declaración de Impacto Ambiental conforme con los requisitos establecidos en el Capítulo 5, Declaraciones de Impacto Ambiental, o se haya clasificado esta acción como una exclusión categórica de acuerdo al Capítulo 3 del mismo. ”

*820 V
La recurrente argumenta como señalamiento de error que la Junta y A.R.P.E. autorizaron un proyecto que tiene un déficit serio de estacionamientos y que con ello incumplieron con las disposiciones del Reglamento de Zonificación, supra, con una Resolución previa de la propia Junta y con la Ley Núm. 183 de 17 de agosto de 2002. No le asiste la razón. De una lectura de los autos, surge que la Junta evaluó el proyecto presentado por el Municipio de San Juan, y en Resolución de 29 de abril de 2002, le solicitó al Municipio que rediseñara la propuesta “de forma tal que cumpla con los espacios de estacionamientos mediante reglamentación vigente”. (Oposición a que se Expida el Recurso de Revisión, Ap. 3, pág. 8) A raíz de esta exigencia de la Junta, el Municipio enmendó su propuesta original para incluir una nueva estructura de estacionamiento que proveerá un total de 1,457 estacionamientos. Para poder obtener dicha cifra se tomaron en cuenta los espacios de estacionamiento a servirse del proyecto y aquéllos que serán afectados por las construcciones a ser realizadas. Si consideramos que se aplicó precisamente la Sección 74.03.08 del Reglamento de Zonificación, supra, en cuanto a que se debe proveer “un (1) espacio por cada cinco (5) asientos”, es forzoso concluir que la enmienda al proyecto cumple con la reglamentación vigente aplicable.
La recurrente alega que se debió aplicar la Sécción 74.01 del Reglamento de Zonificación. La misma dispone que los espacios de estacionamiento se deben calcular tomando en cuenta los usos existentes y los propuestos para la ampliación del edificio. Sin embargo, determinamos que esta sección no es de aplicación al caso de marras. No estamos frente a una consulta que propone ampliar el Coliseo Roberto Clemente. Estamos ante la constmcción de un salón de exposiciones que si bien será contiguo y tendrá Un acceso desde el interior del Coliseo, es una edificación con funciones independientes a las de aquél. La nueva facilidad será utilizada como sala de exhibiciones, prefunción, inscripciones, y tendrá una cocina para servicios de banquetes. La circunstancia de encontrarse situado aledaño al Coliseo Roberto Clemente, no lo convierte en una ampliación del mismo.
No creemos necesario discutir el señalamiento de la recurrente de que tanto A.R.P.E. como la Junta violaron la Ley Núm. 183 de 17 de agosto de 2002 que enmendó el Artículo 1 de la Ley Orgánica de la Administración de Reglamentos y Permisos. 23 L.P.R.A. sec. 71o. Ello, debido a que este articulado es de aplicación para la expedición de permisos de constmcción o de uso. El proyecto presentado ante A.R.P.E. no es un permiso de constmcción o de uso, sino un anteproyecto. La agencia administrativa no está obligada a autorizar la constmcción proyectada hasta tanto se cumplan las condiciones impuestas por la Junta. En esta etapa de estudio, la aprobación de A.R.P.E. no constituye una autorización para iniciar construcción alguna. Ésta última sólo se da en la etapa de la aprobación de los planos finales, la cual en el caso de autos aún no se ha dado.
También alega la recurrente que A.R.P.E. asumió jurisdicción prematuramente. Arguye que estando pendiente una solicitud de reconsideración presentada ante la Junta por la recurrente, el Municipio de San Juan presentó ante A.R.P.E. un anteproyecto para la aprobación de dicho organismo administrativo. No le asiste la razón a la recurrente. La Sección 7.07 del Tópico 3 del Reglamento de Procedimientos Adjudicativos de A.R.P. E., supra, claramente dispone que no se expedirán las autorizaciones y permisos solicitados ante dicha agencia hasta que la decisión de la Junta advenga final y firme. Pero, de igual manera, dispone que se pueden radicar la solicitud mientras la consulta de ubicación es evaluada por la Junta.
En cuanto a que A.R.P.E erró al aprobar un anteproyecto que carecía del endoso de la Autoridad de Carreteras, puesto que el anterior endoso había expirado, resolvemos que si bien es cierto que el endoso de la Autoridad de Carreteras había expirado al momento en el cual A.R.P.E. aprobó el anteproyecto, no es menos cierto que la Sección 10.03 del Reglamento para la Certificación de Obras, supra, solamente exige prueba de que el proyecto contó con los endosos preliminares de las agencias concernidas y de que se presentaron las recomendaciones correspondientes. Una lectura del expediente ante nos, arroja que el Municipio presentó pmeba ante la Junta de que preliminarmente el proyecto contaba con los endosos y recomendaciones requeridas *821 en esa etapa del trámite administrativo. Claro está, ello no impide que posteriormente A.R.P.E. solicite los documentos que crea son necesarios para hacer sus determinaciones al momento de considerar una solicitud de permiso de construcción. Más importante resulta el hecho de que la propia Resolución recurrida de la Junta notificada el 4 de septiembre de 2002 contiene los señalamientos del endoso preliminar de la Autoridad de Carreteras relacionados al proyecto propuesto.
El planteamiento de violación al debido proceso de ley que levanta la recurrente nos parece inmeritorio. A la recurrente le fueron notificadas las resoluciones interlocutorias de la Junta que reflejan el trámite administrativo. Además, aunque no se le reconoció como parte interventora, sino hasta la Resolución de la Junta aquí recurrida, la recurrente resolvió participar de forma activa en el procedimiento de consulta. Véase Solicitud de Revisión, pág. 5 y su Apéndice, Anejo 11, págs. 74-79. La recurrente tuvo también la oportunidad de ser escuchada al someter una solicitud de reconsideración a lá Junta.
Por otro lado, la Sección 7.01 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación le otorga la facultad a la Junta de ordenar la celebración de vistas administrativas o públicas cuando así lo dispongan las leyes o reglamentos aplicables. La Junta decidió que no era necesaria la vista, pues tuvo ante su consideración la información contenida en el expedienté sometido por la parte proponente. Es norma reconocida que "[l]a interpretación administrativa de un estatuto [o reglamento] por aquellos organismos encargados de ponerlos en vigor y velar porque sus fines se cumplan, nos merecen un gran peso". Quevedo Segarra v. J.A.C.L., 102 D.P.R. 87, 96 (1974); M. & V. Orthodontics v. Negdo. Seg. Empleo, 115 D.P.R. 183, 188 (1984). Resolvemos que la Junta actuó dentro de sus prerrogativas y facultades al determinar que no era necesario la celebración de una vista.
Por último, la recurrente señala que fue errada la autorización de la Junta porque no se sometió una Declaración de Impacto Ambiental y autorizó un proyecto distinto al que fuera objeto de la Evaluación Ambiental. No estamos de acuerdo con la recurrente. La Regla 241(A) del Capítulo 4 del Reglamento de la Junta de Calidad Ambiental, supra, dispone que toda agencia deberá presentar una Evaluación Ambiental ante la Junta de Calidad Ambiental referente a toda acción cubierta por el antes mencionado Reglamento. Se debe presentar dicha Evaluación Ambiental a menos que previamente se determine presentar una Declaración de Impacto Ambiental de acuerdo a los requisitos que así lo disponen en el Capítulo 5 de dicho Reglamento, o se haya clasificado la acción como una exclusión categórica, según el Capítulo 3.
En la presente situación de hechos, encontramos qué el Municipio de San Juan presentó una Evaluación Ambiental y cuando enmendó el proyecto original, presentó la correspondiente enmienda ante la Junta de Calidad Ambiental. Consecuentemente, la Junta de Calidad Ambiental expresó haber analizado la enmienda al documento ambiental en carta del 4 de junio de 2002. (Memorando en Oposición a Solicitud de Revisión, Anejo V del Apéndice, págs. 25-26). Determinó que el proyecto cumplía con lo dispuesto en el Artículo 4(c) de la Ley Núm. 9, supra. Es decir, cumplió con la fase de evaluar el posible impacto ambiental. Resolvemos que la determinación de la Junta de Calidad Ambiental merece gran deferencia de nuestra parte y que el error señalado no fue cometido.
VI
A la luz de los fundamentos previamente consignados y al amparo de las normas de revisión judicial aplicables, encontramos que no hay base jurídica racional para llegar a un resultado distinto al que llegaron los organismos administrativos recurridos. Dado que las actuaciones de la Junta de Planificación y A.R.P.E. no exceden las facultades que les fueron conferidas por ley y que no se cometieron los errores aducidos por la recurrente, las Resoluciones impugnadas deben prevalecer. Resolvemos que resulta procedente expedir el auto solicitado para confirmar las resoluciones recurridas.
*822 Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Aida Ileana Oquendo Graulau
Secretaria General