EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Edwin S. Quintero Betancourt<br><br>Peticionario<br><br>v.<br><br>El Tunel Auto Services<br><br>Recurrido | Certiorari<br><br>2015 TSPR 171<br><br>194 DPR \_\_\_\_ |

Número del Caso: CC-2015-0249

Fecha: 23 de diciembre de 2015

Tribunal de Apelaciones:

     Región Judicial de San Juan

Abogada del Peticionario:

     Lcda. Janice Estrada Ruiz

Abogado de la Parte Recurrida:

     Lcdo. Carlos A. Mercado Rivera

Materia: Sentencia con Opinión de Conformidad

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Edwin S. Quintero Betancourt

    Peticionario

        v.                  CC-2015-249    Certiorari

El Túnel Auto Services

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 23 de diciembre de 2015.

Se expide el auto de *certiorari* y se revoca la Sentencia emitida por el Tribunal de Apelaciones. Se devuelve el caso al Departamento de Asuntos del Consumidor para que éste renotifique la citación de vista administrativa y continúe con los procedimientos de cumplimiento y ejecución de su resolución administrativa.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión de Conformidad. El Juez Asociado señor Martínez Torres está conforme con el resultado por entender que el Departamento de Asuntos del Consumidor desestimó el caso indebidamente porque la citación que expidió al peticionario Edwin S. Quintero Betancourt es defectuosa. Esta no cumplió con las exigencias de la Regla 20.2 del Reglamento Núm. 8034. Además, la agencia no aplicó primero las sanciones progresivas que dispone la Regla 23 del mismo reglamento.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Edwin S. Quintero Betancourt<br><br>    Peticionario<br><br>        v.<br><br>El Túnel Auto Services<br><br>    Recurrido | CC-2015-0249 | *Certiorari* |

Opinión de conformidad emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ.

San Juan, Puerto Rico, a 23 de diciembre de 2015.

Estoy conforme con la Sentencia que hoy emite este Tribunal por entender que en esta ocasión nos corresponde revocar la determinación del Tribunal de Apelaciones y devolver el caso para que el Departamento de Asuntos del Consumidor continúe con los procedimientos de cumplimiento y ejecución que estaban siendo dilucidados ante la referida agencia administrativa. Ello, debido a que, considero, que ésta abusó de su discreción al ordenar el cierre y archivo de la querella del peticionario cuando tal consecuencia no le fue apercibida en la notificación de vista y se le coartó su derecho de cumplir con las disposiciones legislativas y reglamentarias exigidas para la solicitud de transferencia o suspensión de la vista administrativa.

A tales efectos, procedo a delimitar los hechos que suscitaron la controversia de autos.

I

El Sr. Edwin S. Quintero Betancourt (señor Quintero Betancourt o peticionario) presentó una querella contra El Túnel Auto Services, Inc. (recurrido o El Túnel) ante el Departamento de Asuntos del Consumidor (DACo). Reclamó que el 2 de junio de 2010 acudió a las instalaciones del recurrido debido a que su vehículo Suzuki modelo *Sidekick* del año 1998 no operaba adecuadamente. Asimismo, alegó que luego de suplir varias piezas que le fueron requeridas por el recurrido para la eventual reparación, el vehículo aún no funcionaba. Además, mientras estuvo en las instalaciones de El Túnel, el referido automóvil fue vandalizado.

Ante estos hechos, en la primera vista administrativa que se celebró, las partes establecieron un Proyecto de Acuerdo. En éste convinieron que el señor Quintero Betancourt pagaría la cantidad total de $1,300 para que el recurrido reparara el vehículo. De igual forma, este último se haría cargo de los daños producto del vandalismo. A pesar de lo anterior, un mes más tarde se detuvo la reparación. Ello, debido a que el señor Quintero Betancourt no quiso acceder al petitorio del recurrido para que asumiera unos gastos relacionados al motor del vehículo.

Trabada así la controversia, el 5 de octubre de 2011 DACo emitió y notificó una Orden en la cual dictaminó que en un término de 10 días el recurrido le pagara al señor Quintero Betancourt la cantidad de $1,000 por concepto de los daños que el vehículo sufrió mientras estaba bajo el cuidado y responsabilidad de éste. Asimismo, ordenó que en un término de 5 días el peticionario removiera el vehículo de las instalaciones. El 25 de octubre de 2011 la Orden fue reconsiderada a los fines de aclarar que el recurrido debía entregar el vehículo en las mismas condiciones que lo recibió. De igual forma, se aumentó a 10 días el término para que el señor Quintero Betancourt retirara su vehículo de los predios de El Túnel. La Orden fue notificada el 1 de noviembre de 2011.

Inconforme, el señor Quintero Betancourt recurrió al Tribunal de Apelaciones y señaló que el DACo incidió en sus determinaciones en torno a la responsabilidad de El Túnel sobre la reparación y entrega del vehículo en controversia. Luego de evaluar los planteamientos del peticionario, el foro apelativo intermedio emitió una Sentencia notificada el 28 de junio de 2012 en la que confirmó la determinación de la agencia administrativa. Concluyó que el señor Quintero Betancourt no los colocó en posición de establecer que el foro administrativo había actuado irrazonablemente o abusado de su discreción. Este dictamen no fue recurrido por ninguna de las partes, es decir, advino final y firme.

Posteriormente, según surge del expediente, el señor Quintero Betancourt compareció en varias ocasiones ante el DACo para informar que el recurrido estaba en incumplimiento con la referida Resolución del DACo, entre otros planteamientos relacionados.[1] Sin embargo, pertinente a la controversia de autos, del expediente se desprende que el 12 de junio de 2014 el señor Quintero Betancourt presentó una *Moción informativa y seguimiento*. En ésta, le notificó a la agencia que estaría fuera de Puerto Rico desde el 19 de junio hasta el 9 de julio de 2014, por lo que cualquier vista que tuviese a bien señalar lo hiciera con anterioridad o posterioridad a estas fechas.

---

[1]Del expediente surge que el peticionario recurrió al DACo para solicitar el cumplimiento con la Resolución en controversia en innumerables ocasiones, a saber: *Moción Urgente Informativa* de 10 de noviembre de 2011; *"Segunda" Moción Urgente Informativa* de 21 de noviembre de 2011; *Moción en Cumplimiento de Orden* de 22 de diciembre de 2011; *Moción solicitando se incluya el presente documento en la vista del 13 de enero de 2011* de 30 de enero de 2012; *Moción solicitando investigación y determinación de DACO del balance consignada* (sic) de 9 de marzo de 2012; *Moción de seguimiento a solicitud de investigación y solicitud de nueva orden de entrega de automóvil* de 7 de mayo de 2012; *Segunda moción de seguimiento y comentarios a documento de alegado* (sic) *en oposición a la parte recurrida sometido a DACO* de 25 de junio de 2012; *Moción para que se de cumplimiento de Orden* de 30 de agosto de 2012; *Moción de Seguimiento para que se de cumplimiento de sentencia* de 2 de octubre de 2012; *Moción Informativa* de 15 de febrero de 2013; *Moción Informativa, Proveer Copia de Documentos y Solicitud se Reseñale Vista para Mostrar Causa* de 7 de octubre de 2013; *Moción solicitando determinación por DACO* de 17 de enero de 2014; *Moción Seguimiento* de 18 de febrero de 2014; Carta al Secretario del Departamento de Asuntos del Consumidor del 31 de febrero de 2014 y 16 de abril de 2014, entre otras mociones similares.

A pesar de lo anterior, el mismo 19 de junio de 2014 el DACo emitió una *Orden para Mostrar Causa* mediante la cual citó a las partes para que comparecieran a una vista a celebrarse el 14 de julio de 2014 a las 9:00am en la Oficina Regional de San Juan. Según especificado en el documento, el propósito de esta vista era que las partes mostraran causa por la cual no se debía imponer al querellado una multa de $500 por incumplimiento con la Resolución y Orden del 5 de octubre de 2011. En consecuencia, se consignó el siguiente apercibimiento:

> Se apercibe a la parte querellante [sic] que si no comparece a la vista administrativa por si o por conducto de su abogado, renuncia a su derdcho (sic) a ser oído y constityuira (sic) un allanamiento para que este Departamento le imponga la multa antes expresada sin trámite ulterior. El pago de la multa referida no lo relevará de cumplir con todo lo ordenado en la Resolución. Este Departamento tomará la acción legal correspondiente para el cobro de la multa impuesta y solicitar auxilio del Tribunal de Primera Instancia para hacer cumplir lo ordenado. *Orden para Mostrar Causa,* Apéndice del Recurso de *Certiorari*, pág. 73.

Además del apercibimiento que antecede, en el referido documento también se dispuso que la vista solo sería suspendida por justa causa. Para ello, la parte interesada en la suspensión debía acompañar la evidencia pertinente con un escrito presentado cinco días laborables antes de la fecha del señalamiento. Asimismo, debía notificar a la otra parte y proponer tres fechas alternas. El incumplimiento con este procedimiento, conllevaría la imposición de sanciones.

Así las cosas, el señor Quintero Betancourt no compareció y, el mismo día de la vista, la Jueza Administrativa emitió una Resolución en la que dejó sin efecto la orden para mostrar causa y ordenó el cierre y archivo de la querella. Particularmente, expresó que:

> La parte querellante no compareció ni ofreció excusas por su incompetencia [sic]. La parte querellada compareció representada por el Lcdo. Carlos A. Mercado Rivera. La incompetencia [sic] de la parte querellante nos impide dilucidar la controversia del alegado incumplimiento de la querellada.
>
> . . . .
>
> Se deja sin efecto la vista de Orden para Mostrar Causa y se ordena el cierre y archivo de la querella. *Resolución,* Apéndice del Recurso de *Certiorari,* pág.83.

Ante esto, el 22 de julio de 2014 el peticionario presentó una *Moción de Reconsideración,* en la que acompañó el boleto de avión mediante el cual evidenció que salió de Puerto Rico el 19 de junio de 2014, según había informado en la moción presentada el 12 de junio de 2014. Además, indicó que aunque estaba supuesto a regresar el 9 de julio de 2014, se enfermó y tuvo que posponer su regreso para el 14 de julio de 2014, fecha para la cual estaba pautada la vista en controversia. A tales efectos, anejó la copia del boleto de avión que corroboraba esta data. De la moción descrita se desprende que el peticionario alegó que tan pronto como llegó y encontró en su buzón la carta de DACo, aproximadamente a las 2:20pm del mismo 14 de julio de 2014, acudió a la Oficina Regional de San Juan. Sin embargo, adujo que no

pudo comunicarse con la Jueza Administrativa, sino que le indicaron que la decisión de la vista le sería notificada mediante comunicación escrita por correo. En consecuencia, el peticionario hizo constar que la notificación de la vista fue durante el tiempo en que había informado estaría de viaje, lo que le imposibilitó solicitar la transferencia dentro de los términos aplicables. En fin, solicitó que se decretara otra fecha para la celebración de la vista en la que se dilucidaría la orden de mostrar causa. Esta solicitud fue rechazada de plano por el DACo, debido a que la agencia no se expresó dentro del término requerido por ley.

Oportunamente, el señor Quintero Betancourt recurrió al Tribunal de Apelaciones y solicitó que se revisara la determinación administrativa. Señaló que el DACo actuó en contravención del Reglamento de Procedimientos Administrativos, *infra*, al no otorgarle cinco días laborables para que éste solicitara la transferencia de la vista. Argumentó, además, que con el cierre y archivo de la querella administrativa, el DACo dejó sin efecto la Sentencia emitida por el Tribunal de Apelaciones notificada el 28 de junio de 2012.

A pesar de lo anterior, el foro apelativo intermedio emitió una Sentencia notificada el 19 de diciembre de 2014 mediante la cual confirmó la actuación administrativa. Razonó que el término de cinco días dispuesto en el Reglamento no opera a favor del

peticionario, sino que está concebido para evitar la dilación innecesaria de los procedimientos. Por lo tanto, "[n]o es el DACo, quien debe conceder el término de 5 días para que la parte solicite la transferencia, sino que la regla le impone a la parte con interés el término mínimo de 5 días para presentar esta solicitud". *Sentencia del Tribunal de Apelaciones*, Apéndice del Recurso de *Certiorari*, pág. 15. A tenor con lo anterior, el tribunal concluyó que la vista fue debidamente citada y el peticionario incumplió con su responsabilidad de solicitar la transferencia. Además, determinó que no hubo prueba contundente del estado de salud del peticionario que justificara su incomparecencia. Por ende, concluyó que el DACo actuó dentro de sus facultades al ordenar el cierre y archivo de la querella. Asimismo, determinó que esta actuación no tuvo el efecto de invalidar el dictamen que había sido emitido por ese foro. Por el contrario, esbozó que el peticionario todavía tenía disponible el procedimiento judicial de ejecución de orden administrativa. El foro apelativo intermedio se ratificó en su dictamen mediante Resolución notificada el 24 de febrero de 2015 en la cual declaró no ha lugar la reconsideración presentada por el peticionario.

Inconforme, el señor Quintero Betancourt recurrió ante este Tribunal mediante recurso de *certiorari* y nos solicitó que revoquemos la resolución impugnada y ordenemos que el DACo asigne una nueva fecha para

celebrar la vista de orden de mostrar causa. En esencia, además de lo que hemos descrito anteriormente, argumentó que cuando la Asamblea Legislativa creó al DACo tuvo como propósito el proveer un foro para que los ciudadanos pudieran presentar sus controversias y obtener una solución justa, rápida y económica. Por tanto, con la determinación de cierre y archivo de su querella, el foro administrativo no estaba actuando conforme los propósitos para los cuales fue creado.

Atendidos los planteamientos del peticionario, el 29 de mayo de 2015 emitimos una Resolución en la que le ordenamos a la parte recurrida que mostrara causa por la cual el recurso presentado por el señor Quintero Betancourt no debía ser expedido. Acorde con nuestra petición, el 22 de julio de 2014 ésta presentó un escrito intitulado *En cumplimiento de orden y solicitando se declare sin lugar el certiorari del peticionario.*

Así las cosas, con el beneficio de la comparecencia de ambas partes expedimos el auto de *certiorari* y procede disponer de la controversia.

II

A.

Desde la creación de las agencias administrativas, se ha reconocido que para poder desempeñar adecuadamente las funciones que le fueron delegadas, es necesario que éstas puedan ejercer poderes de adjudicación. D. Fernández Quiñones, <u>Derecho Administrativo y Ley de</u>

Procedimiento Administrativo Uniforme, 3ra ed., FORUM, 2013, pág. 71. *Véanse,* además, López Vives v. Policía de P.R., 118 DPR 219, 230 (1987); Hernández Denton v. Quiñones Desdier, 102 DPR 218, 223 (1974). Cónsono con lo anterior, el tercer capítulo de la Ley Núm. 170 de 12 de agosto de 1988 (Ley Núm. 170-1988), según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 2151-2170a, establece los derechos y los procesos que las agencias administrativas están llamadas a garantizar durante estos procedimientos adjudicativos.

En armonía con estos postulados y que la Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como la Ley Orgánica del Departamento de Asuntos del Consumidor, 3 LPRA sec. 341 *et seq.*, le otorgó amplios poderes para "atender, investigar y resolver las querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía", Rodríguez v. Guacoso Auto, 166 DPR 433, 438 (2005), el DACo divulgó el Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034, Departamento de Estado, 13 de junio de 2011 (Reglamento Núm. 8034).[2] Éste tiene como propósito proveer un procedimiento uniforme para la solución de las

---

[2] De acuerdo al propósito enunciado en el Art. 3 de la Ley Núm. 5 de 23 de abril de 1973, conocida como la Ley Orgánica del Departamento de Asuntos del Consumidor, 3 LPRA sec. 341b, el DACo es un organismo gubernamental creado para vindicar los derechos del consumidor, así como para fiscalizar el control de los precios sobre los artículos de uso y consumo, entre otros propósitos similares.

querellas presentadas ante la agencia. Ello, porque al igual que la vasta mayoría de las agencias administrativas, el DACo tiene como fin atender los asuntos que le fueron delegados de una forma justa, práctica y flexible, sin adoptar el "rigorismo procesal que generalmente ha caracterizado a los tribunales tradicionales". Pérez Ríos v. Hull Dobbs, 107 DPR 834, 840 (1978).

B.

Pertinente a la controversia de autos, la Regla 30 del Reglamento Núm. 8034 establece los procedimientos a seguir en la etapa de cumplimiento y ejecución de las órdenes y resoluciones de la agencia administrativa. En particular, el inciso 30.2 establece que:

> Dentro de los treinta (30) días siguientes a la certificación de notificación de la resolución, el querellante deberá informar si el querellado ha incumplido. **De no hacerlo, se entenderá que el querellado ha cumplido y se procederá al cierre y archivo del caso.** Regla 30.2, Reglamento Núm. 8034. (Énfasis suplido).

A partir de esta disposición, podemos concluir que el querellante deberá ser proactivo en mantener informada a la agencia en torno al cumplimiento del querellado con las determinaciones administrativas. No obstante, es importante resaltar que el reglamento relaciona el cierre y archivo del caso con el cumplimiento de las órdenes o resoluciones, no con una sanción por incumplimiento de las partes en cuestión.

Por otra parte, esta regla también provee remedios adicionales que la agencia puede emplear para asegurar el cumplimiento de sus determinaciones. Específicamente, establece un procedimiento para que el órgano administrativo pueda imponerle una multa al querellado que está en incumplimiento. De acuerdo a la Regla 30.4 del referido Reglamento Núm. 8034, la parte en incumplimiento deberá ser citada a una vista mediante una orden para mostrar causa por la que no procede la imposición de la sanción monetaria. En la citación, se deberá especificar que la imposición de la multa no releva el cumplimiento de la resolución en inobservancia. Regla 30.4, Reglamento Núm. 8034.

Por tanto, uno de los mecanismos contemplados en la reglamentación de procedimientos adjudicativos del DACo es la imposición de multas administrativas a la parte querellada en incumplimiento. Sin embargo, para que esto proceda es necesario que se celebre una vista administrativa.[3] Al respecto, la propia Regla 20.2 del Reglamento Núm. 8034, le impone la obligación al DACo de fijar y notificar la fecha para la vista con al menos 15 días de antelación a ésta. Ello, a menos que las partes

_____

[3]El inciso (cc) de la Regla 4 del Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034, Departamento de Estado, 13 de junio de 2011 (Reglamento Núm. 8034) define una vista administrativa como un "[p]roceso o audiencia mediante el cual se concede la oportunidad a las partes de comparecer, por derecho propio o por su representante, y presentar alegaciones o defensas a una reclamación o a la imposición de una multa".

pacten otra fecha con la anuencia del juez u oficial administrativo que esté rigiendo los procedimientos.

Además de esta exigencia en el término de notificación, esta disposición reglamentaria también establece que:

> Se le apercibirá al querellante que si no comparece a la vista, el Departamento podrá ordenar la desestimación y archivo de la querella por abandono. Si el querellado no comparece se podrán eliminar sus alegaciones. El Departamento podrá también condenar al pago de honorarios de abogado o dictar cualquier otra orden que en Derecho proceda. Regla 20.2 del Reglamento Núm. 8034.

Es decir, además de notificar dentro del término reglamentario, el DACo también debe incluir los apercibimientos en cuanto a lo que se expone cada parte de no comparecer. En este inciso reglamentario también se establece el carácter público de la vista y que las partes podrán presentar toda aquella evidencia documental y testifical pertinente.

Estas disposiciones son cónsonas con la Sec. 3.9 de la Ley Núm. 170-1988, 3 LPRA sec. 2159, la cual contempla los requisitos que tiene que observar una agencia administrativa al momento de emitir la notificación de una vista. En términos generales, ésta también establece que la fecha, hora y lugar de la vista deberán ser notificados con no menos de 15 días de anticipación a su celebración. Este periodo podrá ser acortado si la agencia notifica y fundamenta una causa justificada para ello. *Íd.*

De esta forma, en aquellos casos en los que se intente acortar este periodo debe guiar el principio de la razonabilidad. Es decir, "no puede recurrirse a una regla mecánica y es menester examinar caso por caso la cuestión de si se redujo el periodo, de manera tal que no lesione los derechos de las partes." Fernández Quiñones, op. cit., pág. 187. Ello, debido a que este término responde a las garantías mínimas que las agencias están llamadas a observar como corolario del principio fundamental de debido proceso de ley.

Por tanto, este Tribunal ha sido enfático en reconocer que aunque este término es de cumplimiento estricto, "las agencias administrativas tienen que observarlo y los tribunales tienen que hacerlo valer". Gutiérrez Vázquez v. Hernández y otros, 172 DPR 232, 246 (2007) (Citas omitidas). En aras de asegurar la celebración de un procedimiento justo y equitativo, la agencia administrativa debe otorgar una notificación adecuada y oportuna para que la parte pueda prepararse para su comparecencia. Almonte *et al.* v. Brito, 156 DPR 475, 483 (2002); *véanse*, además, Álamo Romero v. Adm. de Corrección, 175 DPR 314, 329 (2009); Depto. Rec. v. Asoc. Rec. Round Hill, 149 DPR 91, 98-99 (1999).

C.

No obstante, la fecha dispuesta por la agencia administrativa para la celebración de la vista no es inmutable, sino que una parte puede solicitar su

transferencia y suspensión. Ahora bien, para esto la parte solicitante tiene que cumplir con unos requisitos particulares. Específicamente, la Regla 21 del Reglamento Núm. 8034, establece que este requerimiento deberá ser presentado "(1)inmediatamente que se conozca los fundamentos para la misma; y (2) con no menos de **cinco (5) días laborables** de anticipación a la fecha señalada para la vista, a menos que se trate de eventos no previsibles o fuera del control de la parte solicitante". Regla 21, Reglamento Núm. 8034. (Énfasis suplido). Nótese que este término también es cónsono con la sec. 3.12 de la Ley Núm. 170-1988, 3 LPRA sec. 2162, donde se establece que no procederá la suspensión de una vista a menos que una parte presente una solicitud en la que justifique por escrito y con 5 días de antelación, los motivos de su requerimiento.

Al respecto, en Gutiérrez Vázquez v. Hernández y Otros, *supra,* este Tribunal expresó que como "el D.A.Co tuvo ante su consideración una solicitud de suspensión que incumplió los requisitos estatutarios y reglamentarios para su presentación. . . entendemos que esta solicitud no debió si quiera ser considerada por la Juez Administrativa que atendía la querella presentada". *Íd.,* pág. 252. Así, este Tribunal concluyó que la solicitud de suspensión de la vista administrativa no debió ser considerada por el DACo, debido a que no cumplió con los términos legislativos y reglamentarios

requeridos. En torno a este particular, el profesor Demetrio Fernández Quiñones hizo las expresiones que incluimos a continuación:

> La decisión es clara respecto al momento en que procede presentar una moción de aplazamiento. De no cumplirse con el mandato de la disposición legal que requiere para su presentación que se haga cinco días antes de la fecha señalada para la audiencia, es fácil concluir que se decretará no ha lugar. Existen situaciones imprevisibles que son propias de la existencia y de la vida que necesariamente tienen que ser consideradas como fundamentos válidos para solicitar un aplazamiento. El sistema no puede funcionar de espaldas al acontecer de la realidad. Precisa, sin embargo, resaltar que pueden darse situaciones que su evolución se inicia antes de comenzar a decursar el periodo de cinco días y le imponen a un hombre prudente anticiparlas para evitar causarle daño al procedimiento. . . Todo lo indicado apunta **a que las partes y las agencias también están obligadas a estar atentas al desenvolvimiento de los eventos y circunstancias que pueden incidir sobre si el señalamiento de la audiencia ha de prevalecer.** Fernández Quiñones, op.cit., pág. 193. (Énfasis suplido).

Como vemos, la presentación de una moción de transferencia o suspensión de vista no puede ser considerada automáticamente, sino que deberá ser evaluada caso a caso utilizando el criterio rector de la razonabilidad.

Cónsono con lo anterior, además de cumplir con las exigencias descritas, el Reglamento Núm. 8034 también establece que la parte solicitante deberá cancelar los cargos correspondientes y asegurarse de que su solicitud esté debidamente fundamentada. Es decir, que "acredite las razones para la misma y expres[e] tres (3) fechas

alternas dentro de los quince (15) días siguientes a partir de la fecha señalada para la vista". Regla 21.3, Reglamento Núm. 8034. Acto seguido, la precitada regla establece que "el Funcionario que presida la vista podrá imponer sanciones a tenor con la Regla 23 de este Reglamento cuando no se cumpla con el procedimiento establecido en esta regla o se utilice con el motivo [de] dilatar los procedimientos". *Íd.*

Particularmente, la mencionada Regla 23 establece de la siguiente manera:

> Regla 23-Sanciones.
> Cuando una Parte dejare de cumplir con un procedimiento establecido en este reglamento, o una orden del Secretario, el Funcionario, Secretario o Panel de Jueces que presida la vista administrativa podrá a iniciativa propia o a instancia de parte imponer una sanción económica a favor del Departamento o de cualquier parte, que no excederá de doscientos (200) dólares por cada imposición separada a la parte o a su abogado, si este último es responsable del incumplimiento. Si la parte sancionada incumple con el pago de la sanción se podrá ordenar la desestimación de su querella si es el querellante o eliminar sus alegaciones si es el querellado. Regla 23, Reglamento Núm. 8034. (Énfasis omitido).

De lo anterior podemos colegir que la disposición reglamentaria contempla la imposición de una sanción económica de $200 a aquella parte que no cumpla con el reglamento o con una orden del funcionario que preside los procedimientos administrativos. Esto guarda armonía con las Sec. 3.21 de la Ley Núm. 170-1988, 3 LPRA sec. 2170a, en la que el legislador concibió la imposición de sanciones económicas en aquellas circunstancias en las

cuales una parte no cumple con sus órdenes. Más aún, estableció que en aquellos casos en los que la sanción económica no propenda al cumplimiento, se podrá ordenar la desestimación del caso o la eliminación de alegaciones dependiendo de cuál sea la parte en incumplimiento. De igual forma, la referida sección autoriza la imposición de costas y honorarios de abogado. *Íd.*

Por otra parte, el reglamento bajo análisis también indica que el DACo podrá acudir al tribunal para solicitar que su resolución sea puesta en vigor. Regla 30.3, Reglamento Núm. 8034. Al respecto, este Tribunal ha sido enfático en establecer que esta facultad es potestativa, no exclusiva, del DACo. Es decir, cuando el trámite administrativo culminó y hay una resolución que advino final y firme, la parte beneficiada por la determinación no está impedida de acudir al foro judicial para solicitar el cumplimiento y ejecución del dictamen. Ortiz Matías *et al.* v. Mora Development, 187 DPR 649, 658 (2013).

D.

A la luz de lo anterior, es menester recordar que la intervención judicial en la revisión de las determinaciones administrativas se circunscribe a establecer si la actuación de la agencia es arbitraria, ilegal o irrazonable. *Véanse* JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 187 (2009); O.E.G. v. Rodríguez, 159 DPR 98, 119 (2003). Es al foro judicial a

quien le corresponde examinar que las actuaciones de las agencias estén dentro de los poderes que le fueron delegados y son compatibles con la política pública que las origina. Asoc. Fcias v. Caribe Specialty *et al.* II, 179 DPR 923, 941-942 (2010).

A partir de estas delimitaciones, es norma reiterada que los tribunales revisores le deberán otorgar deferencia a los dictámenes de las agencias administrativas. Ello, debido a que estas decisiones gozan de una presunción de regularidad y corrección. *Véanse* Torres Santiago v. Depto. Justicia, 181 DPR 969, 1002-1003 (2011); P.C.M.E. v. J.C.A., 166 DPR 599, 616 (2005). En consecuencia, la revisión judicial está suscrita a los contornos de: (1) la concesión del remedio adecuado; (2) si las determinaciones de hecho están sustentadas en la evidencia sustancial que emana de la totalidad del expediente; y (3) una revisión completa de la corrección de las conclusiones de derecho que fueron adoptadas. Sec. 4.5 de la Ley Núm. 170-1988, 3 LPRA sec. 2175; *véanse,* además*,* Pagán Santiago *et al.* v. ASR, 185 DPR 341, 358 (2010); Mun. de San Juan v. J.C.A., 149 DPR 263, 279-280 (1999).

Así las cosas, y a partir de los principios de justiciabilidad y del marco doctrinario que he expuesto, corresponde resolver la controversia del caso de autos.

III

Según se desprende de los hechos formulados, el 25 de octubre de 2011 el DACo emitió un dictamen en reconsideración en el que ordenó que el recurrido entregara el automóvil en las mismas condiciones en que lo recibió y asumiera el costo de los daños por el vandalismo que sufrió el automóvil del señor Quintero Betancourt mientras estuvo en las instalaciones de El Túnel Auto Services. Asimismo, ordenó que el peticionario procediera a remover el automóvil del lugar.

Además de recurrir al foro apelativo intermedio para que dejara sin efecto la reconsideración de la agencia administrativa, el 19 de noviembre de 2011 el peticionario presentó ante el DACo una moción en la que denunció el incumplimiento con la resolución administrativa y solicitó que éste foro ejerciera contra "la parte querellada las leyes que aplican en estos casos y de continuar temeraria y contumaz procese según la ley y el reglamento en DACO". *"Segunda" Moción Urgente Informativa,* Apéndice del Recurso de *Certiorari*, pág. 107.

Además de la presentación de esta moción, luego de que la Resolución en controversia fuera final y firme, el señor Quintero Betancourt continuó siendo proactivo en el reclamo del cumplimiento con la Resolución del DACo. En consecuencia, no cabe duda que el peticionario ha sido muy diligente durante el procedimiento de ejecución y

cumplió con la Regla 30.2 del Reglamento Núm. 8034 del DACo, en tanto exige que dentro del término de 30 días el querellante informe si se cumplió con la determinación de la agencia administrativa. Según expuse, esto es necesario para que la agencia no interprete que el querellado cumplió con la orden administrativa y proceda a ordenar el cierre y archivo del caso.

Empero, a pesar del interés y la responsabilidad desplegada por el peticionario, el DACo actuó irrazonablemente al ordenar, sin más, el cierre y archivo del caso por la mera incomparecencia de éste a la vista de la orden para mostrar causa pautada para el 14 de julio de 2014. Ello tuvo lugar aun cuando el señor Quintero Betancourt presentó una moción en la cual notificó que estaría fuera de Puerto Rico durante las fechas que concurrieron con la notificación de la citación y a pesar del sinnúmero de diligencias desplegadas para que se hiciera cumplir el fallo a su favor.

De los documentos que obran en el expediente se desprende que el 12 de junio de 2014 el señor Quintero Betancourt presentó ante el DACo una moción en la que informó que estaría fuera de Puerto Rico desde el jueves, 19 de junio hasta el miércoles, 9 de julio de 2014. A pesar de esto, la agencia emitió el 19 de junio de 2014 la citación de la vista a celebrarse el 14 de julio de 2014. Es decir, el mismo día en que el peticionario

informó que saldría de viaje. Ciertamente, aunque esto cumple con las exigencias legislativas y reglamentarias que exigen que la citación de la vista sea notificada con 15 días de antelación a la misma socavó otros derechos del señor Quintero Betancourt.

Ello, pues de esta notificación no se desprendía un apercibimiento en cuanto a la sanción a la que se exponía el peticionario de no comparecer a la vista por él solicitada: el cierre y archivo administrativo de su reclamo. En este sentido, cabe puntualizar que de la notificación y citación de la vista para dilucidar la orden de mostrar causa, no se desprendía un apercibimiento en cuanto a las consecuencias a las que el señor Quintero Betancourt se expondría de no comparecer a la vista. Ello, a pesar de que este Tribunal ha sido enfático al establecer que el debido proceso de ley garantiza a "las personas cuyos derechos pudieran verse transgredidos una mayor oportunidad de determinar si ejercen o no los remedios que le han sido concedidos por ley. De esta manera se obtiene un equilibrio justo entre los derechos de todas las partes, y se obtiene un ordenado sistema de revisión judicial". Asoc. Vec. Altamesa Este v. Mun. San Juan, 140 DPR 24, 34 (1996). Es decir, es necesario que la parte conozca la sanción a la que se expone de ésta incumplir con lo ordenado.

En este caso, esto cobra mayor relevancia en tanto la propia Regla 20.2 del discutido Reglamento Núm. 8034,

exige que el DACo notifique la citación de la vista con 15 días de anticipación y aperciba que la incomparecencia de la parte puede acarrear el archivo de la querella por abandono. Razón por la cual debemos concluir que aunque el DACo notificó la citación de la vista dentro del término establecido de 15 días, no incluyó los apercibimientos pertinentes. El DACo actuó en contravención de su propio reglamento y de las normas procesales básicas que rigen nuestro ordenamiento jurídico.

Por otra parte, la notificación expedida por el DACo también incidió con el término reglamentario del cual la parte es acreedora para poder solicitar la transferencia o suspensión de una vista administrativa. Al peticionario le asiste la razón cuando alega que como la agencia tenía conocimiento del día en que él regresaría a Puerto Rico, con la fecha pautada le coartó su derecho para solicitar adecuadamente la suspensión o transferencia de la vista según exige la Sec. 3.12 de la Ley Núm. 170-1988 y la Regla 21 del Reglamento Núm. 8034. Veamos.

A pesar del carácter directivo del término para solicitar transferencia o suspensión de una vista administrativa[4], este Tribunal ha sido muy enfático en su cumplimiento. Tanto es así que, según discutimos, en Gutiérrez Vázquez v. Hernández y Otros, *supra*, se

---

[4]Sobre el carácter directivo de los términos que rigen los procedimientos adjudicativos, véase Lab. Inst. MEd. Ava. v. Lab. C. Borinquen, 149 DPR 121, 136 (1999).

concluyó que el DACo no tenía que considerar una solicitud de transferencia que le fue presentada el mismo día de la vista administrativa porque ésta no había cumplido con los términos reglamentarios.

Por consiguiente, no puedo avalar el razonamiento acogido por el foro apelativo intermedio en cuanto a este término. Particularmente, cuando consignó que:

> la regla no opera a favor del peticionario, sino a favor de evitar la dilación innecesaria de los procedimientos. No es el DACo quien debe conceder el término de 5 días para que la parte solicite la transferencia, sino que la regla le impone a la parte con interés el término mínimo de 5 días para presentar esta solicitud. *Sentencia del Tribunal de Apelaciones,* Apéndice del Recurso de *Certiorari*, pág. 15.

Si bien es cierto que la referida regla le impone un requisito a las partes, el mero hecho de que el término no está impuesto directamente al órgano administrativo no implica que la agencia no está obligada por éste. Aunque éste pretende evitar la dilación innecesaria de los procedimientos, no se puede convertir en un obstáculo para que los reclamos de las partes puedan ser atendidos adecuadamente. En otras palabras, sería absurdo concluir que como el término es un requerimiento a las partes, el DACo no está obligado y puede actuar en contravención a éste logrando así menoscabar el derecho de una parte a solicitar la transferencia de una vista conforme impone su propio Reglamento.

Precisamente esto fue lo que ocurrió en el caso de autos. Desde el 12 de junio de 2014 la agencia administrativa conocía que el señor Quintero Betancourt estaría fuera de Puerto Rico hasta el 9 de julio de 2014.[5] No obstante, emitió la orden para mostrar causa el 19 de junio de 2014. Es decir, el mismo día en que el señor Quintero Betancourt anunció que viajaría fuera de Puerto Rico. En consecuencia, la fecha pautada para la vista le imposibilitaba cumplir con los requisitos necesarios para solicitar la transferencia o suspensión de la misma. Si tomamos como punto de partida la fecha en la que el peticionario informó que regresaría a Puerto Rico, el miércoles, 9 de julio de 2014, solamente le quedaban 2 días laborables para poder solicitar la transferencia de la vista pautada para el 14 de julio de 2014. Ello, en contravención con el reglamento, el cual exige que el requerimiento se haga con "no menos de cinco (5) días laborables de anticipación a la fecha señalada para la vista". Regla 21.1, Reglamento Núm. 8034. Por tanto, al señalar la vista administrativa para una fecha en la que conocía que el peticionario se vería impedido de solicitar su suspensión o transferencia, me veo obligado a concluir que el DACo coartó uno de los derechos

---

[5]Es pertinente señalar que según alegado por el peticionario, y se desprende del expediente ante nuestra consideración, en ocasiones anteriores el señor Quintero Betancourt había notificado mediante moción al DACo que estaría fuera de Puerto Rico y no se había hecho ningún señalamiento durante ese tiempo. *Véase,* por ejemplo, *Moción Informativa,* Apéndice del Recurso de *Certiorari,* pág. 179.

principales que le asisten a una parte durante un procedimiento adjudicativo.[6]

De igual forma, no puedo tomar livianamente que el propio Reglamento de DACo contempla la imposición de sanciones menos severas ante el incumplimiento con el reglamento o una orden del funcionario administrativo. Por tanto, me parece desacertado el que ese organismo perdiera de perspectiva la diligencia del señor Quintero Betancourt para que se cumpliera con la orden emitida a su favor.

Del expediente se desprende que desde el 2010, fecha en que el peticionario incoó su reclamo ante la agencia administrativa, éste ha sido muy diligente y responsable con el cumplimiento de los postulados legislativos y reglamentarios que rigen los procedimientos adjudicativos ante el DACo. En consecuencia, reconozco que si bien el peticionario puede recurrir al Tribunal de Primera Instancia para solicitar el cumplimiento de la Resolución del 25 de octubre de 2011 a pesar del cierre y archivo de la querella en la agencia administrativa, ello no

---

[6]Es pertinente recordar que en la *Moción de Reconsideración* presentada por el señor Quintero Betancourt para solicitar que la agencia administrativa dejara sin efecto el cierre y archivo de su caso, éste evidenció que su regreso no ocurrió hasta el mismo día en que la vista estaba pautada, es decir, el 14 de julio de 2014. Fecha en la cual alega acudió a la Oficina Regional de San Juan del DACo, pero no pudo contactar a la Juez Administrativa y simplemente le indicaron que la determinación le sería informada mediante correo. A pesar que el peticionario evidenció esta información en la reconsideración presentada, el DACo se sostuvo en su determinación.

propende a la flexibilidad y economía procesal que se buscaba al otorgarles poderes de adjudicación a los organismos administrativos.[7]

Por consiguiente, me veo obligado a concluir que el DACo actuó arbitraria, caprichosa e irrazonablemente al ordenar el cierre y archivo de los procedimientos de ejecución de la Resolución del 25 de octubre de 2011. Máxime, cuando la incomparecencia del señor Quintero Betancourt fue la consecuencia de una citación defectuosa en tanto no se apercibió de las sanciones que acarrearía su incomparecencia, no se impusieron sanciones progresivas menos severas y de que se le coartara su derecho a solicitar la transferencia o suspensión de la vista administrativa. Ello, en clara contravención de los estatutos y disposiciones que rigen al DACo.

IV

Por los fundamentos expuestos, estoy conforme con la decisión de la mayoría de este Tribunal de expedir el auto, revocar la Sentencia emitida por el Tribunal de Apelaciones y devolver el caso para que el Departamento de Asuntos del Consumidor renotifique la citación de

---

[7]De la *Moción Informativa de Vista por DACO 6 de mayo de 2013* presentada por el señor Quintero Betancourt ante el DACo el 14 de mayo de 2013, se desprende que éste presentó un reclamo ante el Tribunal de Primera Instancia de San Juan utilizando la Resolución emitida por la agencia administrativa del 25 de octubre de 2011. Sin embargo, según expuesto en la referida moción, el foro judicial remitió el reclamo al foro administrativo.

vista administrativa y continúe con los procedimientos de cumplimiento y ejecución de su resolución administrativa.


                                    Luis F. Estrella Martínez
                                         Juez Asociado